In Re ROWLAND J. MARTIN ) TEXAS COURT OF APPEALS
   Relator    )
           )
           ) FOR THE FOURTH DISTRICT
           )
           )
           ) BEXAR COUNTY, TEXAS

## RELATOR'S MOTION TO REINSTATE ORIGINAL PROCEEDING FOR CONSOLIDATION WITH INTERLOCUTORY PROCEEDINGS IN CASE NO. 04-14-00483-CV

### TO THE HONORABLE FOURTH COURT OF APPEALS:

Rowland J. Martin, Relator in the above styled case, files this, his *"Relator's Motion To Reinstate Original Proceeding For Consolidation With Interlocutory Proceedings In Case No. 04-14-00483-CV,"* pursuant to Section 27.008 of the Texas Citizen's Participation Act, to move the Court to re-instate his original proceeding in aid of the Court's jurisdiction in *Martin v. Bravenec et al*, Case No. 04-14-00483-CV, and to ask the Court to vacate and expunge from the record the gag order findings entered on July 17, 2014, , in support of which this is shown:

### STATEMENT OF THE CASE

Relator asserts that the trial court misapplied the law of collateral estoppel by crediting Bravenec's arguments about res judicata and conversely declining to credit Relator's collateral estoppel defense to Bravenec's tort liability claim. Relator's original petition arose from a dispute in *Bravenec v. Martin*, Case No. 2014-CI-07644 about a lis pendens filing noticing purchase money lien interests attached to real property known as 1216 West Ave., in San Antonio, Texas. In 2005. Edward Bravenec acquired a lien interest in the property from Moroco Ventures, LLC during an attorney client relationship between Relator and the Law Office of McKnight and Bravenec. In 2006, he executed a foreclosure against his grantor, Moroco

1

Ventures, LLC. On March 5, 2014, the federal court declined to adjudicate the purchase money lien. On July 9, 2014 the trial court heard and denied Relator's motion to dismiss under the Texas Citizen's Participation Act, and granted Bravenec's request for a temporary injunction.

There is no question that the federal district court that granted summary judgment for Bravenec on the 2006 foreclosure sale also declined jurisdiction to expunge a 2014 lis pendens filing noticing purchase money claims. *See Defendants' Exhibit 2.* On cross-examination, Bravenec argued collateral estoppel does not apply to him:

Q. ... Were you not aware that you would be collaterally estoppel from raising those issues [about res judicata bars] is a state court forum?

A. I don't think that collateral estoppel would apply to me, so no, I don't agree with that.

Q. How do you explain [that]?

A. Well, collateral estoppel would be against the losing party. And so we are the prevailing party. So my interpretation of collateral estoppel ... [is] that you were collaterally estopped from asserting what is essentially a matter that had already been decided in Federal Court [and] in Probate Court. So I think that was our argument.

Q. Very well. But [Judge Hudspeth's] order denied you relief, the relief you requested, did it not?

A. It did.

Q. Okay. So you were the losing party on this motion; is that correct?

A. On that one motion, [I] certainly was.

*Court Reporters' Transcript for July 9, 2014, pp. 39 (lines 17 – 25) to 40 (lines 1 – 11).* When asked whether he could identify the place in his judgment that refers "to a lien interest where [Relator] served in a capacity as a lien holder," Bravenec stated, "I cannot show you." *Id. at p. 46, lines 13 – 16.* Thus, it appears that Bravenec "certainly was" bound by the collateral estoppel

2

defense arising from the federal district court's decision to decline jurisdiction over purchase money issues. *Court Reporter Record For July 19, 2014, pp. 39 – 40.*

Nonetheless, on July 17, 2014, the trial court adopted Bravenec's theory in ordering temporary injunctive to suppress Relator's lis pendens notices, and various communications with anonymous contracting third parties. (hereafter "gag order"). Familiarity with the original petition and with Relator's *"Advisory On Fraud On The Court"* filed on February 19, 2015 is assumed. As set forth below, Relator invokes the Court's TCPA writ jurisdiction for affirmative relief by way of mandamus and prohibition that is beyond the scope of what is available in the interlocutory appeal in Case No. 04-14-00493-CV. *In re Lipsky,* 2013 Tex. App. LEXIS 4975 (Tex. App.—Fort Worth , 2013) (TCPA-related petition for writ of mandamus).

## ARGUMENT AND AUTHORITIES

### A. The De Novo Standards For Appellate Review Of Res Judicata And Collateral Estoppel Issues Use Objective Criteria To Detect Abuses Of Discretion.

Relying on the standard of review for mandamus set forth in Relator's original petition, the Court is requested to hold that the trial court abused its discretion in its treatment of collateral estoppel doctrine. *C.f., Bonniwell v. Beech Aircraft Corporation,* 663 S.W.2d 816 (Tex.1984). Under traditional rules of res judicata, a party may be barred from relitigating claims from prior litigation,[1] or barred from relitigating issues that were previously adjudicated in an earlier proceeding under the doctrine of collateral estoppel.[2]

---

[1] A claim of res judicata under Texas law consists of three elements:6 (1) a final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second suit based on claims actually litigated in the first suit or claims which should have been litigated in the first suit.

[2] For collateral estoppel to apply, three elements must be met: (1) the parties were cast as adversaries in the prior proceeding; (2) the issues sought to be litigated in the current proceeding were "fully and fairly litigated" in the prior proceeding; and (3) those issues were "essential" to the outcome of the prior proceeding. *Kenedy Mem'l Found. v. Dewhurst,* 90 S.W.3d 268, 288 (Tex. 2002); *Sysco Food*

Offensive collateral estoppel describes when a plaintiff seeking to estop a defendant from relitigating an issue which the defendant previously litigated and lost in a suit involving another party. *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Defensive collateral estoppel occurs when a defendant seeks to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in another action against the same or a different party. *United States v. Mendoza*, 464 U.S. 154, 159 n.4 (1984). Collateral estoppel is further differentiated according to mutuality versus non-mutuality, i.e. whether parties with or without privity assert the estoppel bar. *See United States v. Mollier*, 853 F.2d 1169, 1175 n.7 (5th Cir. 1988).

Lastly, when the issue is a question of law rather than of fact, the prior determination is not conclusive either if injustice would result or if the public interest requires that re-litigation not be foreclosed. *City of Sacramento v. State of California*, 50 Cal.3d 51, 64 (1990); *Greenfield v. Mather*, 32 Cal.2d 23, 35 (1948). The public interest exception to res judicata and collateral estoppel are not confined to cases concerning public agencies, nor does it require that the initial determination of an issue be "erroneous." *Kopp v. Fair Political Practices Com'n*, 11 Cal.4th 607, 622, fn. 16 (1995). In either case, a party must specifically plead an affirmative defense or it is waived. TEX. R. CIV. P. 94; *Kinnear v. Texas Comm'n on Human Rights*, 14 S.W.3d 299, 300 (Tex. 2000).A.2d 184 (N.H. 2010).

1.      **The Trial Court Departed From Guiding Principles By Deferring To Conflicting Res Judicata Issues In The Real Parties' Pleadings And Offensive Collateral Estoppel Issues In Bravenec's Testimony.**

The major implication of Bravenec's testimony - that there is no such thing as the defensive use of collateral estoppel by parties on the losing end of a judgment - is simply

---

*Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994); *see also, Harvey Specialty&Supply, Inc. v. Anson Flowline Equip. Inc.*, 434 F.3d 320, 323 (5th Cir. 2005).

preposterous. It reflects a common misconception about the meaning of collateral estoppel doctrine. Although res judicata and collateral estoppel are often improperly argued together, the Texas Supreme Court has repeatedly disapproved the practice as set forth in *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627 (Tex. 1992):

> an example of the confusion concerning collateral estoppel is the court of appeals' holding that "res judicata does not preclude relitigation of issues that the first court did not actually try and determine, unless a determination of those issues was essential to the judgment in the first suit."... The court relied on Restatement (Second) of Judgments § 27 (1982), which is entitled "Issue Preclusion—General Rule", i.e., collateral estoppel. See Id. § 17(3), and comment (c). We disapprove similar language in the case cited by the court, *Faour v. Faour*, 762 S.W.2d 361 (Tex.App—Houston [1st Dist] 1988, writ denied). Our own recent holdings have contributed to the confusion by holding without elaboration that res judicata requires an "identity of issues" between the prior and subsequent suits. *See, e.g., Coalition of Cities for Affordable Utility Rates v. Public Utilities Commission*, 798 S.W.2d 560, 563 (Tex.1990); *Byrom v. Pendley*, 717 S.W.2d 602, 606 (Tex. 1986); *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex.1984). If an identity of issues is strictly required, then there is no basis for precluding issues that should have been raised in the prior suit but were not, and there is no distinction between claim preclusion and issue preclusion. *See Flores v. Edinburg Consolidated Indep. School Dist.*, 741 F.2d 773, 776 (5th Cir.1984)." fn 2 pp. 628-629.

*Id.* Even when issue preclusion is plausibly invoked, offensive and defensive uses are subject to different criteria. Offensive collateral estoppel in favor of a winning party such as a judgment-creditor is proper only if he or she "can produce record evidence demonstrating that [a prior court] conducted a hearing in which [it] was put to its evidentiary burden," otherwise "collateral estoppel may be found to be appropriate." *Matter of Pancake, 106* F.3d 1242, 1246 (5th Cir. 1997).

In contrast, whether a losing party in an Anti-SLAPP suit can prevail with a defensive use of collateral estoppel, *Charalambopoulus v. Grammer*, Civil Action No. 3:14-CV-2424-D (N.D. Tex. January 29, 2015), or not as in *Singh v. Lipworth*, Case No. C073177 (Cal App. 3rd Dist. 2014), depends on the viability of the evidence presented by the proponent. For example, the Court ruled for the non-moving party of the Anti-SLAPP motion in *Charalambopoulus* because

5

there was "no evidence that would enable the court to identify the issues that the [prior court] actually decided," Id. at p. 62.

The record evidence distinguishes Bravenec's suit, from the suit brought by the non-moving party in *Charalambopoulus*, as a transparent attempt to relitigate a jurisdictional determination by a federal court that specifically declined on that basis to expunge a purchase money lis pendens notice he requested. The record evidence includes orders by more than one federal judge, and all are consistent with the transactional and chain of title details that form the legal basis of Relator 's collateral estoppel and separate transaction defenses. *Anderson v. Law Firm of Shorty, Dooley & Hall*, 393 Fed. Appx. 214 (5th Cir. Aug. 26, 2010) (applying separate transaction rule of res judicata argument in attorney client dispute ).

Bravenec's reliance on res judicata in pleadings and offensive collateral estoppel in testimony is problematic. While it is true that his judgment is under attack, the forum for the attack is U.S. Court of Appeals Case No. 14-50093, the court that rendered the final judgment, not the 285th Judicial District Court, where Relator asserts a purchase money interest. In this regard, the federal court with competent jurisdiction has not spoken in Case No. 14-50093 about the issue of finality. While the res judicata argument in his pleadings he refers to preclusion claims, and his testimony on collateral estoppel refers to preclusion of lis pendens issues, the same federal judge who authored his judgment – U.S. Senior District Judge Harry Lee Hudspeth - denied his 2014 post-judgment motion to expunge lis pendens on jurisdictional grounds that suggest non-identical issues between the federal appellate case and the state interlocutory appeal.

On cross-examination, Bravenec could not identify record citations to the purchase money issue that was supposed to be barred by his judgment as required by Fifth Circuit doctrine on offensive collateral estoppel in *Pancake, Id.* Lastly, here as in *Bravenec v. Flores*, Case No.

6

04-11-00444-CV (Tex. App. – San Antonio, 2013), he claimed a need for special measures to protect him from abuse by an opposing party, but his own conduct presents facts issues about abuse arising from his undisclosed title transfer to Torralba Properties the day before the temporary injunction hearing on July 9, 2014. Thus, the trial court departed from guiding principles. In summary, the trial erred by giving effect as a matter of law to Bravenec's suspect arguments confusing res judicata and offensive collateral estoppel. *Barr, Id.*

2. **Relator's Collateral Estoppel Defense Complies With The Requirement That The Parties Be Adversaries In Prior Litigation.**

Relator's defensive use of collateral estoppel, like Bravenec's offensive use of the doctrine, turns in part the adverse relationship in *Martin v. Grehn* where the parties were "cast as adversaries" based on Relator's interest as former client of Bravenec's law firm and successor of Bravenec's grantor, Moroco Ventures, LLC, on one hand. and Bravenec's interest as a grantee of a second lien interest that relates back to when the attorney client relationship was still in effect, on the other. *Trapnell,* 890 S.W.2d at 801. The summary judgment granted by Judge Harry Lee Hudspeth *artin v. Grehn,* Case No. 13-50070 (5th Cir. 2013) adjudicated foreclosure proceedings on the second lien Bravenec acquired in 2005, secondary to purchase money interests of the seller and Relator, during an attorney client relationship, and with promises to perform legal services. District Judge David Hittner later ruled favorably on Relator's constitutional standing in his attached order denying Bravenec's motion to dismiss. Because Relator advanced purchase money separate from the second lien Bravenec acquired from Moroco Ventures, LLC, his lien claim does not attack the judgment. See attached "Defendant's Undisputed Statement of Facts."

3. **Relator's Collateral Estoppel Defense Showed That The Jurisdictional Question About The Purchase Money Issue Was "Fully And Fairly Litigated" In The Proceedings On Judge Hudspeth's March 5, 2014 Order And Without The Filing Of A Notice Of Cross Appeal By The Real Parties.**

Courts consider the following factors for inquiring into whether issues have been fully and fairly litigated: whether the party was fully heard on the issue in the prior proceeding, whether the decision maker supported its ruling with a reasoned opinion, and whether the decision was subject to appeal or in fact appealed. *Mower,* 811 S.W.2d at 562. The specific issue proposed for preclusion as part of Relator's collateral estoppel defense is Bravenec's allegation that the federal courts asserted jurisdiction over the purchase money issue and that the res judicata effect of *Martin v. Grehn* bars the assertion of purchase money lien interests in the pending interlocutory appeal. This showing depends on whether the purchase money transaction was separate from the transaction adjudicated in the federal case, and whether the jurisdictional question presented by that transaction was adjudicated by Judge Hudspeth's March 5, 2014 order. Bravenec cannot sustain that burden because he testified that he could not specify any record evidence that a disposition was made in Case SA 11-CV-0414 on the merits of the purchase money claim.

Further, following the entry of appellate judgment in Case No. 13-50070, Judge Hudspeth's order on March 5, 2014 adjudicated the denial of a motion for expunction and contempt in which Bravenec sought to penalize the filing of a lis pendens document. *See Order in Defendant's Exhibit 2.* The lis pendens filing noticed transactional details involving a purchase money lien formed on October 31, 2003, with priority over Bravenec's second lien interest, which originated from funding provided from Relator's personal estate, and was motivated by the purpose of enabling Moroco Ventures, LLC to purchase the subject property from seller Roy Ramspeck. *See Lis Pendens Notice in Defendant's Exhibit 7; and see Opening Statement of Rowland Martin in Court Reporters' Transcript for July 17, 2014, pp. 11 - 15.* Two orders entered by U.S. Bankruptcy Judge Leif Clark corroborate those assumptions, the first granting a

8

motion for reconsideration to notice purchase money creditor status in the Bankruptcy Case No. 05-80116, and the second remanding an adversary case involving the same issue. *See Judge Clark's orders attached to Exhibit 7.*

The processing of the issue was also minimally fair. Both orders were subject to appeal. Relator appealed the order by Judge Hudspeth on other grounds and it is under review in *Martin v. Bravenec*, Case No. 14-50093, a proceeding in which Bravenec is an appellee. Neither Relator nor Bravenec appealed the orders by Judge Clark, but one of those orders was eventually admitted into evidence in the trial court hearing on July 17, 2014 with an express stipulation by Attorney Deadman that the case was closed. The issue of whether the federal district court asserted jurisdiction to adjudicate the purchase money lien issue has been fully litigated. The was evidently fair to Bravenec because he was prevailing party.

**4.    Relator's Lien And Lis Pendens Interests Were Essential To The March 5th Order Because They Caused The Court To Decline Federal Jurisdiction.**

Third, the foreclosure issue was unquestionably "essential" to the outcome of the federal court proceeding in *Martin v. Grehn*. Under this element, courts consider the "ultimate issues" - the factual determinations that necessarily form the basis of the prior judgment. *Tarter v. Metro. Sav. & Loan Ass'n*, 744 S.W.2d 926, 927-28 (Tex. 1988); accord *State v. Getman*, 255 S.W.3d 381, 384-85 (Tex. App--Austin 2008, no pet.) ("The entire record from the earlier proceeding must be examined with realism and rationality to determine precisely what fact or combination of facts were necessarily decided and which will then bar their relitigation").

The element of "essentialness to the outcome" as applied to establish the collateral estoppel effect of the purchase money lien issue is readily met by the nexus between the purchase money issue and the March 5, 2014 order denying expunction, but the second lien foreclosure sale transaction was not, for two reasons. First, the foreclosure sale judgment was

9

already final on March 5, 2014. Second, the federal district court rejectred Bravenec argument that Relator lacked standing, but declined to exercise federal jurisdiction 2014 to adjudicate the purchase money interests. Thus, collateral estoppel precludes the argument that the claim preclusion effect of the foreclosure judgment operates as an adverse ruling on purchase money.

Lastly, three different judges adjudicated the transactional and chain of title evidence that distinguishes Relator 's purchase money lien claim as a separate transaction from Bravenec's second lien and its foreclosure in 2006. One set of determinations led Judge Hudspeth and Judge Hittner to assert federal jurisdiction over the second lien controversy. The purchase money issue was not essential to Judge Hudspeth's final determination about the 2006 foreclosure, but is was essential to Judge Hittner's standing setermination. The other set of determinations led Judge Hudpseth and Judge Clark to decline federal jurisdiction over the purchase money lien claim. The purchase money lien claim was essential to the latter outcome in that the reviewing judges noticed standing on a matter for which there was no federal question jurisdiction.

### 5. Relator's Collateral Estoppel Defense Promotes Public Policy And Fairness Objectives

In addition to the factors above, the Texas Supreme Court has considered, in determining whether to apply collateral estoppel, whether the purposes of that doctrine would be served in applying the doctrine to a particular case. *Trapnell,* 890 S.W.2d at 801. For example, in *Park 100 Investment Group v Ryan,* B208189 (Cal. App. 2nd Dist. 2009), the defendants were attorneys who, in prior lawsuit involving an easement dispute, had filed a lis pendens on a dominant tenement, and were sued by the owners of the dominant tenement who claimed that the lis pendens was wrongfully recorded. On appeal under anti-SLAPP laws, the court of appeals reversed the expunction and denial of dismissal relief, concluding that the filing of the lis

10

pendens was illegal as a matter of law, and that the attorneys were not precluded from asserting the validity of the lis pendens.

Noting that "[c]ollateral estoppel is not an inflexible doctrine," and that "[e]ven if the minimal requirements for its application are satisfied, the doctrine should not be applied if considerations of policy or fairness outweigh the doctrine's purposes as applied in a particular case," the court of appeals reversed the denial of the Anti-SLAPP order as follows:

> ... the courts have recognized that certain circumstances exist that so undermine the confidence in the validity of the prior proceeding that the application of collateral estoppel would be unfair to the defendant as a matter of law. [For example,] application of collateral estoppel is unfair where the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result. ..... when Judge Treu was first called upon to address the propriety of the lis pendens in considering the expungement motion, he was not provided with the proper legal authority. His ruling was based upon misrepresentations by both parties as to the state of the law. Both Oviatt and Heron erroneously represented to the court that there was no legal authority in California discussing the propriety of recording a lis pendens on a dominant tenement in an easement dispute.. when Judge Treu rendered his order expunging the lis pendens, the legal issues had not been fully presented and his decision was based on an incomplete and erroneous understanding as to the state of the law. ... new authority provided a "colorable" argument that the recording of the lis pendens was permissible. ... In these circumstances it is inherently unfair to conclude that the orders rendered by Judge Treu, including the expungement order, conclusively establish that the lis pendens was illegal as a matter of law and thus, it is inappropriate to bind attorneys Ryan and Brosman to those rulings ... When the question is one of law rather than a question of fact, a prior conclusion does not prevent a reexamination of the issue, either if injustice would result or if the public interest requires that relitigation not be foreclosed.

Id. at p. 12 – 15. The facts here run strikingly parallel to those in *Park.* In the proceeding below, Bravnec persuaded the trial court to indulge a "non-mutual" application of collateral estoppel doctrine, essentially for the benefit of non-party transferees who had not disclosed to the court. Further, the state court case is a second action that affords Relator the chance to litigate purchase money lien interests, as opposed to mortgagor rights of redemption, as was the case in federal court, the presenting "procedural opportunities unavailable in the first action that could readily

cause a different result." *Larry York v. State of Texas*, 373 S.W. 3d 32 (2012); *Chisholm v. Chisholm*, 209 S.W.3d 96, 98 (Tex. 2006).

Here too, because the temporary injunction hearing preceded the first Texas case to apply Anti-SLAPP law to a lis pendens dispute, the trial court "was not provided with the proper legal authority," and this led to a "ruling was based upon misrepresentations by both parties as to the state of the law" and "an incomplete and erroneous understanding as to the state of the law." There are even parallels between the two cases in terms of the nature of the legal disputes. In *Park* the question was whether an attorney litigating an easement dispute could file a lis pendens attaching the dominant estate. Here, the question left open by the order of the Bexar County Probate Court #1 was whether an Administrator and a purchase money lien holder could file a lis pendens notice citing a dual interest in a subject property as common fund for satisfaction of claims by the estate and its administrator, even though the estate, like the subservient tenement, had no formal legal interest in the property. Credit defensive collateral and deed estoppel is due.

**B.    Tex. Civ. Prac. & Rem. Code 51.014(a) Does Not Provide An Adequate Remedy At Law Given Relator's Exceptions To Res Judicata For Public Policy And Unfairness.**

In its order of February 2, 2015, the Court denied Appellees' motion to dismiss and granted their motion for an extension of time, stating that "in disposing of this appeal, this court will consider only those issues raised in appellant's brief that relate to the orders this court has expressly identified as the subject of this appeal." Id. Subsequently, the real parties filed a brief alleging for the first time on appeal an unlitigated cause of action for fraud in support of their claim for temporary injunctive relief. As a result, Relator's burden requires require review of issues relating to orders other than those disposed by the trial court on July 17, 2015. Because the Court's order limits the adequacy of Section 51.014(a) as a remedy at law for the real parties' reliance on fraud to support temporary injunctive relief and the error is not harmless for reasons

explained before. Relator has thus sustained the second element of the case to reinstate original proceedings for mandamus and prohibition relief. *Batzel v. Smith*, 333 F.3d 1018,1025 (9th Cir. 2003), cert. denied 541 U.S. 1085 (2004) (Anti-SLAPP immunity).

### 1. Exceptions On Public Policy Grounds To The Real Parties' Reliance On Res Judicata Theories To Support Claims For Tortious Interference.

Relator requests mandamus relief from the temporary injunction order to vindicate the public policy rationale for his legitimate use of collateral estoppel for defensive purposes. The court in *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71; (Tex. App – 1st Dist. – Houston 2013) disposed of the tortious interference claim there with the following holding: "To establish a cause of action for tortious interference, a plaintiff must prove that (1) a contract subject to interference exists, (2) the defendant committed a willful and intentional act of interference with the contract, (3) the act proximately caused injury, and (4) the plaintiff sustained actual damages or loss …Ordinarily, merely inducing a contract obligor to do what it has a right to do is not actionable interference." *Id.* On this basis, the court of appeals there reversed a trial court order denying the defendant's TCPA motion to dismiss.

Relator's collateral estoppel defense warrants preclusion of the res judicata theory of the real parties' tortious interference claim for similar reasons. The real parties are not entitled to assert injuries due to interference because the lis pendens notice is not a per se attack on Bravenec's judgment and therefore merely induces the contracting parties to manage the inherent risk of doing business with Bravenec as they have a right to do.[3] More importantly, the entire

---

[3] Relator's lis pendens notice is distinguishable from the one struck down In *Wallace v. Kelley*, 2007 U.S. Dist. LEXIS 56472 (D. Neb. Aug. 1, 2007), but even there the federal court noted that an unadjudicated state law claim associated with a lis pendens noticed filed under Nebraska law was equitably tolled under 28 U.S.C. 1367, even though the court there had sanctioned the pro se plaintiffs for filing notices of lis pendens after final dismissals of their federal case against a mortgage backed securities trust defendant, and after state court proceedings to approve the sale of the subject properties had concluded. *Id.*

13

rationale for the underlying claim is disfavored on public policy grounds because Bravenec acquired his original lien interest in the subject property during a former attorney client relationship with Relator as was establish in Case No. 04-13-00370-CV, and the use of collateral estoppel for the offensive purpose of vindicating purchase money lien interests is also justified for that reason. [4]

Under *Zuniga v. Grose, Locke, & Hebdon*, 878 S.W. 2d 313, 318 (Tex. App. San Antonio 1994, writ ref'd), the Court undoubtedly retains dominant supervisory jurisdiction and inherent authority to regulate the activities of the Law Office of McKnight and Bravenec. *See, Archer v. Blakemore*, 367 S.W.2d 402, (Tex. App. Austin -1963) (quiet title case involving client request to cancel deed used for in-kind payment); and *Barranza Family Limited Partnership v. Levitas*, Case No. 13-07-00470-CV (Tex.App. 13th Dist. - Corpus Christi, 2009) (right of interested party principle to an accounting). There the Court stated: "For the law to countenance ... abrupt and shameless shift[s] of positions would give prominence (and substance) to the image that lawyers will take any position, depending upon where the money lies, and that litigation is a mere game and not a search for truth ..." *Zuniga, Id*

A diligent search reveals few cases of attorney conduct that even remotely approach the issues about inequitable conduct in this case. In *Amalfitano v Rosenberg*, 428 F. Supp. 2d 196 (S.D.N.Y., 2006), appealed in 533 F.3d 117, 125 (2d Cir., 2008), *certified to state court in* 12 NY3d 8 (N.Y. App., 2009), an attorney's acts of deceit leading in procuring an erroneous summary judgment in a prior case compelled the federal courts to certify a question for state court review about whether detrimental reliance was a mandatory element for attorney deceit

---

[4]     In *Rose v. Rothrock*, Case No. 08-3884 (E.D. Penn, 2009), a federal court denied a motion to impose sanctions against a Section 1981 lis pendens claimant who had asserted an unadjudicated interest in an executory contract of sale that the defendants had allegedly breached. The court reasoned that the claimant had established a prima facie case for his lawsuit under Pennsylvania law based on executory interest in a contract of sale and an assertion of first amendment rights.

under New York's anti-deceit statute. But this case is worse than *Amalfitano* by far by Zuniga's standards. The attorney in *Amalfitano* acted to secure a benefit for his client. Here, Probate Court orders entered on March 19, 2014, signify that Bravenec's status was that of an undischarged attorney of record up to that date, implying accountability in that same status at the time he entered into the contract of sale he purports to enforce in this case. *Cf., In re Liberty Trust Co.,* 130 B.R. 467 (W.D. Tex. 1991) (disregarding attorney withdrawal unsupported by formal order of discharge). Despite that status, Bravenec has kept in-kind consideration far exceeding the quantum merit value of McKnight and Bravenec's unperformed services, executed a post-petition foreclosure to acquire the first lien note from an adverse party, profited from the rents on the property through a holding company, 1216 West Ave., Inc., and then secured a gag order to suppress a former client's attempts to recover purchase money lien interests through fraud on the court after a covert transfer of the subject property the preceding day. The public policy issue was unadjudicated in Federal Case SA 11-CV-0414 and therefore presents a matter this Court is at liberty to resolve in the interest of deterring attorney transactions that increase and distort litigation.[5]

### 2. Exceptions On Unfairness Grounds To The Real Parties' Reliance On Res Judicata And Fraud Theories In Support Of Temporary Injunctive Relief.

Relator seeks prohibition relief on grounds of unfairness to preclude the Bexar County District Courts from extending the judgment in Federal Case No. SA 11-CV-0414 to sustain the real parties' unlitigated fraud rationale for temporary injunctive relief. The court of appeals in

---

[5] The fact that trial proceedings were conducted despite an automatic stay in Case No. 2006-CI-15329 and Case No. 2014-CI-07644 arouses other serious public policy concerns warranting opportunities to participate in government to maximum extent allowed by the law. Relator invoked state law from *Larry York v. State* in vain in the federal district, bankruptcy and appellate courts, but none of the federal courts applied the state court choice of law in response. *Goad v Zuehl Airport Flying Community Owners Association, Inc.*, Case No. 04-11-00293-CV (Tex. App. – San Antonio, May 23, 2012) (rejecting vexatious litigant classification of pro se litigant).

15

*James, et al, v. Calkins*, Case No. 01-13-0018-CV (Tex. App. – Houston [1st Dist.] August 21, 2014) disposed of a fraud claim pursuant to Tex. Civ. Prac. & Rem. Code Section 12.002(b) with the following holding: "Appellees claimed ... that appellants knew that the lis pendens was fraudulent when it was filed and that [one appellant] admitted under oath that she knew that the lis pendens was fraudulent. But no evidence supports these assertions, and "[c]onclusory statements are not probative and accordingly will not suffice to establish a prima facie case ... The evidence shows that that the lis pendens provided notice of the pendency of the 61st District Court lawsuit, which requested a declaratory judgment that a 2007 deed conveying [a] home to a trust creadted and controlled by [appellee] is invalid." *James, Id. at p. 28.* Here, the probative evidence flowing from Bravenec's testimony on July 9. 2014 both negates the res judicata and collateral estoppel theories he alleged, and affirmatively legitimates Relator's use of collateral estoppel for defensive and offensive purposes. *See Part A, supra.*

The lis pendens mandamus case in *La Chappelle v. Superior Court of Riverside County*, Case No. E058014 (Cal. App. 4th Dist. 2013) (mandamus proceeding reversing lis pendens expunction) validates Relator's exceptions to the real parties' maintainence of a fraud claim, whether on interlocutory appeal or on remand. *La Chappelle* involved a similar fact situation where purchasers at a nonjudicial foreclosure sale moved to expunge a lis pendens by alleging that the claimant could not establish the evidentiary merit of his claim. In its ruling, the trial court cited the following statement in Miller and Starr (3rd ed.) section 10.208 to support its ruling: "The purchasers title (at a foreclosure sale) . . . is not encumbered by any interest that is created and recorded after the deed of trust, but prior to the date of the foreclosure sale, even if the foreclosure sale purchaser had actual or constructive notice of the intervening lien or interest." *Id at p. 2.* On appeal, the *La Chappelle* court of appeals concluded that the foreclosure

judgment was inconclusive about whether or not the underlying deed was void: the lis pendens claimant "stated grounds to set aside the sale based on the invalidity of the trust deed" and "he does claim an interest in the real property so that the trial court erred in expunging the notice of lis pendens." *Id. at p. 4.*

Here, the purchase money lien encumbrance that Relator noticed in his lis pendens filing was created long before the second deed of trust Bravenc acquired in 2005 and its foreclosure in 2006. Further, here as in *La Chapppelle*, the federal court decision is inconclusive for purposes of the matters in controversy in the pending interlocutory appeal. The simple fact of the matter is that Bravenec was not the primary beneficiary in Federal Case No. SA 11-CV-0414 – his co-defendants Charles Grehn and Reliant Financial were. Bravenec was a tag along first lien assignee defendant, and a vicarious beneficiary of the judgment for Reliant Financial, due to his role as the plaintiff of trespass to try title suit against Reliant Financial and his acquisition of first lien interest through a foreclosure settlement in that suit. Consequently, the judgment in Federal Case No. SA 11-CV-0414 offers him no repose from the void order rule, especially not in the context of unadjudicated state law claims that were equitably tolled under 28 U.S.C. 1367.

*La Chappelle* teaches that the Court retains extraordinary writ powers to wipe the slate wiped clean, whereas the inadequacy of remedies at law to accomplish that purpose in the pending TCPA interlocutory appeal could possibly doom Relator's attempts to correct a manifest injustice in that forum. *Cf., Security State Bank & Trust v. Bexar County, et al*, Case No. 04-11-00928-CV (Tex. App. – San Antonio 2012) (deprivation of due process calls for measures to wipe the slate clean). For example, contrary to supposed self-executing automatic stay protection, there were trial proceedings on December 8, 2014 in the 285th Judicial District Court and the Monitoring Court. *Cf., Varian Medical Systems, Inc. v. Delfino,* 35 Cal. 4th 180, 192

(2005) appealed in Super. Ct. No. CV780187 (Cal. 2005) (lack of trial court jurisdiction due to appeal in Anti-SLAPP case triggering automatic stay). Although the attached Docket Sheet states that the setting was "per injunction," there is no reference in the temporary injunction order to the Monitoring Court, and the proceedings as such were accompanied by a lack of advance notice to the undersigned Relator of any specific trial court location. Thus, complete relief calls for a writ of prohibition to address the unfairness of allowing Bravenec to seek repose on a theory of res judicata. *See generally, Appellant's Advisory On Fraud On The Court in Case No. 04-14-00483-CV.*

**C.     The Only Conclusion To Reach From A Correct Application Of Issue And Claim Preclusion Principles Is That The Lien And Lis Pendens Notices Filed In The Case Docket Are Protected Speech.**

The temporary injunction order on July 17, 2014 purports to suppress a certain notice of apparent liability for purchase money claims, a communication involving published speech, and a perfected lis pendens notice, a communication involving present and future speech that is intertwined without spec in docket records of the trial court. Regarding the lien notice, Relator invokes Section 8 of the Bill of Rights of the Texas constitution:

> Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press. In prosecutions for the publication of papers, investigating the conduct of officers, or men in public capacity, or when the matter published is proper for public information, the truth thereof may be given in evidence.

*Id.* According to Section 8, the trial court violated the Bill of Rights, first on May 13, 2014, and again on July 17, 2014, by ordering cancellation without meaningful opportunities to be heard on evidence about the true chain of title attached in "Defendant's Undisputed Statement of Facts."

The trial court's treatment of Relator's lis pendens notice also was error. The trial court had a duty to make specific findings supported by evidence that (1) an imminent and irreparable

18

harm to the judicial process will deprive the litigants of a just resolution of their dispute, and (2) the judicial action represents the least restrictive means to prevent that harm. *Markel v. World Flight, Inc.,* 938 S.W.2d 74 (Tex. App.-San Antonio 1996, no writ). The only conclusion the trial court could reach is it does not attack a judgment to enforce deed estoppel against third party purchase money lien covenants that run with the land described in the record chain of title.

The trial court could also only properly conclude from the injury asserted, the relief requested, and the underlying evidence, that the lis pendens here posed no harm judicial process. The injury Bravenec claimed arose from a lis pendens communication equivalent to the one in *James, Id.* In *James,* TCPA remedies were also affirmed because a lis pendens notice by definition involves a constitutionally protected communication implicating a judicial proceeding:

> We agree that appellees' claims in the underlying case are "based on, relate[] to, or [are] in response to" appellants' exercise of the right to petition as defined by the TCPA. See id. §§ 27.001(4)(A)(i), 27.005(b). As pleaded, appellees' actual and constructive fraud and barratry claims are "based on, relate[] to, or [are] in response to" [the opposing parties'] allegedly fraudulently claiming that they represent [the beneficiary of guardianship] in pleadings filed in various lawsuits. See id. § 27.005(b). Likewise, appellees' fraudulent lien claim is "based on, relates to, or is in response to" the lis pendens filed by [Appellant] with the Harris County clerk that gave notice of her claims against [Appellee] in the 61st District Court lawsuit, which seeks to cancel his transfer of [the beneficiary's] home to a trust controlled by him. All of these are "communication[s] in or pertaining to a judicial proceeding." See id. § 27.001(4)(A)(i). Appellees argue that that these actions cannot be constitutionally protected, but the cases they cite do not apply the TCPA, or do not involve communications of the type at issue here. Accordingly, we hold that appellants met their initial burden to prove that appellees' legal action related to their exercise of the right of petition. See id. § 27.005(c).

The judicial proceeding here involves published communications, and unpublished future communications. On July 9, 2014 , Bravenec relied on evidence consisting of documents from the federal case and his own testimony, but failed to disclose deed records showing he transferred the subject property to a pedente lite purchaser the preceding day. "[A] trial court abuses its discretion ... unless it is clearly established by the facts that one seeking such relief is

19

threatened with an actual irreparable injury if the injunction is not granted." *Markel, Id.* Here, there is only conjecture to suggest that the gag avoided an irreparable injury.

The trial court could also only properly conclude that the lis pendens notice should not have been expunged prior to the conclusion of the affected judicial proceeding. In *Markel,* the Court emphasized the necessity of "a narrowly tailored injunction order." *Id.* Here, the trial court ordered Relator on July 9, 2014 to submit to censorship "in the broadest terms," and indicated by the exchange that ensued when Relator objected at the July 17, 2014 hearing to the lack of narrow tailoring reflected in the proposed terms of the order:

> THE COURT: " ... my intent was to draft the order as broadly as possible. I did not intend the language [to] quote that phrase 'being given its broadest terms' to be included in the order. Why is it in there?"
>
> MR. DEADMAN: "The only reason that's in there ... [is] the lengthy history in this case ..."
>
> THE COURT: " ...I don't know that you need that particular language in the Order. I don't want to make it so broad that it's subject to constitutional challenge ...."

*See, Court Reporters' Transcript for July 17, 2014.* Relying as before uncritically on Bravenec's legally unwarranted and factually unsupported preclusion theories, the trial court then deleted five words, 'being given its broadest terms," but left intact all the original decretal clauses purporting to broadly enjoin Relator's future speech. *Id.* Like *Markel,* there is no evidence of any nexus with lis pendens speech that justified censorship "in the broadest terms" after title had already been transferred by the time of the hearing and before the final judgment. Unlike *Markel,* the covered individuals are all anonymous and even their existence is mostly hearsay. Thus, mandamus and prohibition relief is needed to wipe the slate clean. *Security State Bank & Trust v. Bexar County, et al,* Case No. 04-11-00928-CV (Tex. App. – San Antonio 2012), at p. 10.[6]

---

[6]    The problem with issuing an order to censor future speech, then selectively removing only the clauses that are salutary in nature, in order to avoid making the order look "so broad that it's subject to

WHEREFORE, PREMISES CONSIDERED, Relator prays that the Court issue a writ to vacate and expunge the gag order nunc pro tunc, to prohibit the gag order findings, and for such other relief both in law and in equity as he may be justly entitled in Case No. 04-14-00483-CV.

Dated: March 13, 2015

Respectfully Submitted,

Rowland J. Martin
951 Lombrano
San Antonio, Tx 78207
(210) 323-3849

---

constitutional challenge," is this: "The very enumeration of the right [freedom of speech] takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon. A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all ..." *NRA v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185 (5th Cir. 2012) (dissenting opinion). Unlike the lis pendens in *James*, moreover, the one here implicates public policy issues regarding the quality of legal service provided the Law Office of McKnight and Bravenec and Relator's viewpoints about practices that prevailed during the mortgage industry crisis. *Mortgage-Specialists, Inc. v. Implode-Explode Heavy Industries, Inc.*, 999 A.2d 184 (N.H. 2010). (anti-slapp mortgage case); *and see, Cortez v. Johnston*, 378 S.W.3d 468 (Tex. App.—Texarkana 2012, pet. denied) (strong matter of public concern involving a member of the state judiciary). Lastly, the text of the order, the trial court's misplaced reliance on erroneous conclusions about res judicata and collateral estoppel, and the illusory nature of the evidence, provide no reasonable assurance whatsoever that censorship was not the ulterior motive. *But see, Cortez, Id.*

## CERTIFICATE OF SERVICE

I mailed a copy of this "Relator's Motion To Reinstate" to Glenn Deadman and Torralba Properties, LLC on March 13, 2015.

Rowland J. Martin

## EXHIBITS

A.  Temporary Injunction Order Of The 285th District Court Dated July 17, 2014

B.  Defendant's Undisputed Statement Of Facts Concerning Chain Of Title

C.  *Charalambopoulus v. Grammer,* Civil Action No. 3:14-CV-2424-D (N.D. Tex. January 29, 2015).

D.  *Park 100 Investment Group v Ryan*, Case No. B208189 (Cal. App. 2nd Dist. 2009).

E.  *La Chappelle v. Superior Court of Riverside County*, Case No. E058014 (Cal. App. 4th Dist. 2013).

F   Order of U.S. District Judge Harry Lee Hudspeth dated March 5, 2014.

G.  Order of U.S. District Judge David Hittner

H.  Orders of U.S. Bankruptcy Judge Lief. M. Clark

I.  Orders of the Fourth District Court of Appeals on Fewbruary 2, 2015 and February 24, 2015

# A

DOCUMENT SCANNED AS FILED



2014CI07644 -D285

Cause No.2014-CI-07644

| | | |
|---|---|---|
| EDWARD L. BRAVENEC AND 1216 WEST AVE., INC.<br>*Plaintiff* | §<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT |
| VS. | §<br>§<br>§ | 285TH JUDICIAL DISTRICT |
| ROWLAND MARTIN, JR.<br>*Defendants* | §<br>§<br>§<br>§ | BEXAR COUNTY, TEXAS |

## TEMPORARY INJUNCTION

On this day came to be heard the Verified Application for Temporary Restraining Order (the "Application") filed by Edward Bravenec and 1216 West Ave., Inc. After hearing the argument of counsel and having considered the Verified Petition and Application and the evidence presented, it clearly appears to the Court that Plaintiffs are entitled to a Temporary Injunction and that the Court is of the opinion that a Temporary Injunction should be issued. This Court specifically finds that Courts have already determined that the rightful owner of the Property is Edward L Bravenec. This Court further finds that in Federal Court Cause No. SA-11-CI-414 styled *Rowland J. Martin, Jr. et al. v. Charles Grehn et al.* the Court found that legal and equitable title to the Property was vested in Edward L Bravenec and further that neither Rowland J Martin, Jr. nor the company he owned, Morocco Ventures, LLC or any successor in interest there to had any interest, legal or equitable, in the Property described as:

> "New City Block 8806, Block 50, Lot 1, Except the North
> West 10.01 feet & Lots 2 & 3; which property is commonly
> referred to as 1216 West Ave., San Antonio, Texas" the
> ("Property")

This Court further finds that despite judgments being rendered against Rowland J. Martin, Jr. that he continues to interfere and cloud the title to the Property or contact potential buyers and title companies to disrupt or disturb any potential sale of the Property by its rightful owner. Rowland J. Martin, Jr. has a history which is documented in the aforementioned federal court case and the subsequent appeal to the Fifth Circuit Court of Appeals in which both courts find his filings to be vexatious and frivolous. But for the temporary injunction, it is likely that his conduct is to continue and the damage to the Plaintiff's in this case would be irreparable and could not be compensated by monies.



**DOCUMENT SCANNED AS FILED**

Therefore, it is the ORDER of this court that Rowland J. Martin, any entity at his request or under his control, his agents, employees and all those acting in concert with him, are hereby enjoined from filing any document whatsoever with this court, any other court, the Bexar County Clerk's Deed Records Office that in any way relates to Plaintiffs or the real property described as

New City Block 8806, Block 50, Lot 1, Except the North West 10.01 feet & Lots 2 & 3; commonly referred to as 1216 West Ave., San Antonio, Texas (the "Property")

It is FURTHER ORDERED that the Bexar County Clerk cancel, expunge, or otherwise render ineffective any document filed by Rowland J. Martin, Jr., entitled "Notice of Apparent Liability for Purchase Money Claims" recorded at Book 16601, Page 2158, "Perfected Lis Pendens" or any like titled document.

It is FURTHER THE ORDER of this court that Rowland J. Martin, Jr., any entity at his request or under his control, his agents, employees and all those acting in concert with him are hereby enjoined from contacting any title company, any potential buyer, bank or otherwise interfering with the potential sale of the Property in any manner whatsoever.

It is FURTHER ORDERED that Rowland J Martin, Jr. is prohibited from joining any third parties or additional defendants to this suit without prior approval of this court.

It is FURTHER ORDERED that this matter be set for trial on the merits on the ___8th___ day of December, 2014 at 9:00 a.m.

Plaintiff's bond is hereby set at $500.00, cash or surety. The clerk of the court is to issue notice to Defendant of this order and hearing and the hearing scheduled for injunction. Notice may be accomplished by fax, personal service, or private process.

Witness my hand this _17th_ day of July, 2014, at _8:30 A.M._

_____
Honorable Judge Presiding

APPROVED AS TO FORM:

_____
Glenn J Deadman
509 South Main Ave
San Antonio, Texas 78204
210-472-3900
gjdeadman@aol.com

_____
Rowland J Martin Jr
Pro Se
951 Lombrano
San Antonio, Texas 78207

# B


2014CI07644 -P00106

Cause No. 2014-CI-07644

| | | |
|---|---|---|
| EDWARD L. BRAVENEC AND 1216 WEST AVE., INC. | ) ) ) | IN THE DISTRICT COURT |
| Plaintiff | ) ) | |
| v. | ) ) | |
| ROWLAND MARTIN, JR. | ) ) | 285TH JUDICIAL DISTRICT |
| Defendants | ) ) | |

| | | |
|---|---|---|
| ROWLAND MARTIN, JR. | ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | |
| EDWARD L. BRAVENEC, AND THE LAW OFFICE OF MCKNIGHT AND BRAVENEC, | ) ) ) | BEXAR COUNTY TEXAS |
| Defendants | ) ) | |
| In Re OLGA VASQUEZ-SILVA d/b/a ONE FOR AUTISM, INC. | ) ) | |
| Impleaded Third Party | ) | JURY TRIAL REQUESTED |

FILED
DONNA KAY McKINNEY
DISTRICT CLERK
BEXAR COUNTY
14 NOV 19 PM 4: 33
BY____ DEPUTY

## DEFENDANT'S UNDISPUTED STATEMENT OF FACTS REGARDING RECORDED EXCEPTIONS TO CONVEYANCES AND WARRANTIES AFFECTING THE REAL PROPERTY KNOWN AS 1216 WEST AVE., SAN ANTONIO, TEXAS

TO THE HONORABLE COURT:

NOW COMES ROWLAND J. MARTIN, JR., Plaintiff in the above entitled and numbered cause, and files this *"Defendant's Undisputed Statement of Facts Regarding Exceptions To Conveyances And Warranties Affecting The Real Property Known As 1216 West Ave., San Antonio, Texas, "* in support of which the following is shown:

The following statement of facts is submitted in support of Defendant's reliance on the doctrine of estoppel by deed in the above styled cause for tortuous interference with contractual relations which Plaintiffs commenced on May 13, 2014.

1

DOCUMENT SCANNED AS FILED

1.     The purchase of the subject property by Moroco Ventures. LLC from Roy Ramspeck, et al, on October 31, 2003, which is documented in a First Deed of Trust discussed in paragraph 2 below, was enabled by Defendant's advance of purchase money on the same date. Specifically, the 1031 Corp., Inc., withdrew a sum in the amount of $135,000 form Plaintiff's escrow account to execute a payment to the seller's title company, American Title Company. The title company issued a receipt of deposit reflecting acceptance of the money for the purchase of the subject property by the buyer, Moroco Ventures, LLC. See Exhibits A and B.

2.     The First Deed of Trust between Moroco Ventures, LLC and seller Roy Rampseck is recorded at Book 10406, Page 1606. The First Deed of Trust contains a clause entitled, "Exception to Conveyances and Warranty," which expressly reserves "prescriptive rights, *whether of record or not* ... and all rights, obligations, and other matters emanating from and existing by reason of the ... operation of any governmental district, agency or authority." See Exhibit C (emphasis added). A notice of Appellant's concurrent interest as a third party purchase money creditor relating back to the purchase on October 31, 2003 is recorded in Bexar County Deed Records in Book 16601 Page 2158 ("Notice of Apparent Liability For Purchase Money Claims"). *See, Exhibits A and B.*

3.     The Second Deed of Trust dated May 3, 2005, recorded at Book 11578 Page 940 reflects McKnight and Bravenec's acquisition of security interest attached 1216 West Ave. in San Antonio, Texas, and was subject to "exceptions to conveyances and warranties" that Appellees voluntarily accepted as second deed grantees. *See, Exhibit D.* In particular, the deed contains the following recital: "Other Exceptions to Conveyance and Warranty: None not of record." Defendant was a co-party with the debtor, Moroco Ventures, to the exceptions to conveyances and warranties under the Second Deed Of Trust.

2

4. The record of the proceeding in *In re Estate of King*, Probate Case No. 2001-CI-1263 establishes that McKnight and Bravenec were attorneys of record for the Appellant and the Estate of King on May 3, 2005. See, Appendix to In re Rowland J. Martin, Case No. 04-13-00370-CV (Tex. App. – San Antonio, 2014). The instrument of record giving notice of Plaintiff's rights as a third party in relation to Moroco Ventures, LLC at the time the parties executed the Second Deed Of Trust was the First Deed of Trust executed on October 31, 2003. Two other instruments effectuating exceptions to conveyances and warranties applicable to the Second Deed Of Trust are recorded in Book 12237, Page 1089, ("Order on Motion For Contempt Against Law Office of McKnight and Bravenec" Bankruptcy Case 06-50829 dated June 20, 2006), and in Book 12426, Page 2234 ("Condominium Declaration of Moroco Ventures, LLC Establishing the Deco Village Annex" dated October 2, 2006). *See Exhibits E and F.*

5. On October 5, 2005, Albert McKnight withdrew as an attorney of record from the engagement between McKnight and Bravenec and the Estate of King, but not Edward Bravenec did not seek order form the Probate Court to memorialize his withdrawal. See, Appendix to *In re Rowland J. Martin,* Case No. 04-13-00370-CV (Tex. App. – San Antonio, 2014).

6. On October 3, 2006, McKnight and Bravenec executed their second foreclosure under their second deed of trust resulting in the filing of a Substitute Trustee's Deed under the supervision of the 57th Judicial District Court. *See, Exhibit G.* The trustee's deeds state that "MOROCO VENTURES LLC has defaulted in the payment and performance of obligations to ALBERT MCKNIGHT and EDWARD BRAVENEC," and that the conveyance was "subject to any prior liens, obligations for taxes, and other exceptions to conveyances and warranty in the Deed Of Trust." As of October 3, 2006, exceptions to conveyances and warranty were reflected in four instruments of record, including the Second Deed Of Trust dated May 3, 2005.

3

7. On October 31, 2006, the 57th Judicial District Court approved a settlement in Case No. 2006-CI-15329 between Plaintiffs McKnight and Bravenec, and Defendants, Reliant Financial, Inc., et al. The settlement subrogated McKnight and Bravenec to the position of Reliant Financial, Inc. as the original grantees of the First Deed of Trust. *See, Exhibit H.* On November 1, 2006, the 57th Judicial District Court entered an order denying intervention and injunctive relief which adopted the finding that a foreclosure took place on October 3, 2006 in accordance with the trustee's deed recital that "MOROCO VENTURES LLC has defaulted in the payment and performance of obligations to ALBERT MCKNIGHT and EDWARD BRAVENEC." *See, Exhibit I.*

8. In 2012, the U.S. Bankruptcy Court entered orders noticing Defendant's claim as a third party purchase money creditor in Chapter 13 Case 05-80116-LMC, and remanding a proceeding removed from the 57th Judicial District Court in Adversary Case 11-5141. *See, Exhibits J and K.* The U.S. District Court denied Defendants' motion for withdrawal of references in *Martin v. Bexar County, et al,* Case No. SA 12-CV-0998 (W.D. Tex. 2012), through which Defendant sought to consolidate the purchase money claim with the claims in Case No. SA 11-CV-0414-HLH.

9. In 2013, the U.S. Court of Appeals affirmed a summary judgment by the U.S. District Court for the Western District Of Texas in *Martin v. Grehn, et al,* Case No. SA 11-CV-0414-HLH, in favor of McKnight and Bravenec. In pertinent part, the U.S. Court of Appeals affirmed the validity of the 2006 foreclosure sale as adjudged by the 57th Judicial District Court, the non-justiciability of Moroco Ventures' right of redemption, and the take nothing judgment of the federal district court adjudicating Defendant's rights in his capacity as the successor in interest to the right of redemption claimed by Moroco Ventures, LLC. *See, Rowland J. Martin,*

4

DOCUMENT SCANNED AS FILED

*Successor in Interest To Moroco Ventures, LLC v. Charles Grehn, et al*, Case No. 13-50070 (5th Cir., December 4, 2013). The U.S. Court of Appeals declined to review bankruptcy court orders cited in Case No. SA 12-CV-0998 pursuant to Rule 8002(a) of the Federal Rules of Bankruptcy Procedure. *Id.*

10. The judgments of the U.S. District Court and Court of Appeals affirming the 2006 foreclosure sale are silent with respect to the specific matter of the exceptions to conveyances and warranties cited in paragraphs 1 – 8. *Cf., Anderson v. Law Firm of Shorty, Dooley & Hall*, (E.D. La. Feb 17, 2010), *affirmed in* 393 Fed.Appx. 214 (5th Cir. Aug. 26, 2010). The settlement of first and second deed interests by the 57th Judicial District Court in 2006, which was affirmed by the federal court judgments in 2013, remains subject to exceptions to conveyances and warranties noted in paragraphs 1 – 10, including Defendant's "exception clause" privileges, and Plaintiffs' corresponding "exception clause" obligations in their capacities as former attorneys of the Defendant and the Estate of King, second lien grantees, and first lien subrogees, respectively.

11. In 2013, Plaintiff Bravenec recorded a deed recorded an instrument captioned as a "Warranty Deed" in Bexar County Deed Records which omits to disclose exceptions to conveyances and warranties noted in paragraphs 1 – 8. Bravenec and Yulalee McKnight, acting through 1216 West Ave, Inc., were the grantors of the warranty deed they conveyed to Bravenec. Bravenec is charged with notice of exceptions to conveyances and warranties in the chain of title of the Second Deed of Trust and Substitute Trustees Deed naming him as grantee.

12. On March 19, 2014, after Bravenec recorded the warranty deed described in paragraph 11, the Bexar County Probate Court #1 entered an original order to memorialize his withdrawal as an attorney of record in that case on October 5, 2005. On the same day, the Court cancelled a lis pendens notice Defendant filed for the proceeding to declare Bravenec's withdrawal, and made the finding that the Estate of King had no interest in title to the West Ave.

5

DOCUMENT SCANNED AS FILED

property. The Court took no action on allegations about legal malpractice and purchase money issues that were asserted in Defendant's capacity as Administrator for the Estate of King.

13. On May 13, 2014, Bravenec commenced the instant suit against Defendant for tortuous interference with contractual relations. He alleges that he has executed a contract for sale pertaining to the subject property at 1216 West Ave., in San Antonio, Texas, and asks the Court to permanently enjoin Defendant's lis pendens activities pertaining to the subject property, suggesting that the exercise of prescriptive rights reserved in the First Deed of Trust and exceptions to conveyances and warranties in the Second Deed of Trust are precluded by the judgments in Case No. SA 11-CV-0414-HLH and Case No. 13-50070.

14. The statute of limitations for a cause of action to litigate the rescission or breach of a warranty of title to real property in the State of Texas is four years. Tex. Civ. Prac. & Rem Code Section 16.051. The tortuous interference suit was commenced almost four years after the expiration of the four year period following the entry of the Bankruptcy Court order on June 20, 2014 which constructively evicted McKnight and Bravenec form the subject property in 2006.

15. The counterclaims Defendant asserts against the Bravenec plaintiffs in response to the tortuous interference suit were brought within two years from the date of the Bankruptcy Court order on August 10, 2012 noticing Defendant's individual standing to prosecute turnover relief as a third party purchase money claimant. The counterclaims are based on prescriptive rights recorded in Book 16601 Page 2158 in favor of Defendant relating back to the purchase transaction in 2003 and others recorded in Probate Case 2001-PC-1263. As such, the counterclaims are legally and factually distinct from the separate and collateral Second Deed of Trust transaction in 2005 that recorded Moroco Ventures' rights of redemption in Book 11578 Page 940, and that later formed the basis of the foreclosure sale adjudicated in Case No. SA 1-CV-0414 and Case No. 13-50070.

6

DOCUMENT SCANNED AS FILED

16. Defendant filed a notice of appeal on July 8, 2014 and supplemented the notice in part on July 9, 2014 and July 18, 2014, in accordance with Rule 25.1 of the Texas Rules of Appellate Procedure. It is alleged that the Plaintiff's failed to sustain their burden of proof in response to a motion to dismiss the tortuous interference suit, and that the 285th Judicial District Court entered a temporary injunction order on July 17, 2014 after an automatic stay took effect under the supplemental notice of appeal filed on July 9, 2014.

Dated: November 19, 2014

Respectfully Submitted,

Rowland J. Martin
951 Lombrano
San Antonio, Tx. 78207
(210) 323-3849

7

DOCUMENT SCANNED AS FILED

## CERTIFICATE OF SERVICE

I, Rowland J. Martin, certify that a copy of this *"Defendant's Undisputed Statement of Facts Regarding Exceptions To Conveyances And Warranties Affecting The Real Property Known As 1216 West Ave., San Antonio, Texas,"* was submitted to the Court's clerk for electronic service to Attorney Glenn Deadman.

Dated: November 19, 2014

Rowland J. Martin

## VERIFICATION

I, Rowland Martin declare under penalty of perjury that the statements of fact in the above *"Defendant's Undisputed Statement of Facts Regarding Exceptions To Conveyances And Warranties Affecting The Real Property Known As 1216 West Ave., San Antonio, Texas,"* are true to the best of my knowledge, information and belief.

Dated: November 19, 2014

Rowland J. Martin

8

DOCUMENT SCANNED AS FILED

# EXHIBITS

A.    1031 Corp. Escrow Account Statement

B.    Receipt For Deposit In The Amount of $135,000

C.    Deed of Trust dated October 31, 2014 (1st)

D.    Deed of Trust dated May 2, 2014 (2nd)

E.    Order On Motion For Contempt dated June 20, 2006

F.    Condominium Declaration dated October 2, 2006

G.    Substitute Trustees' Deed dated October 3, 2006

H.    Amended Agreed Order of Dismissal in *McKnight and Bravenec v. Reliant Financial, et al.,* Case No. 2006-CI-15329, 57th Judicial District Court, dated October 31, 2014

I    Order Denying Restraining Order And Temporary Injunction in *McKnight and Bravenec v. Reliant Financial, et al.,* Case No. 2006-CI-15329, dated November 1, 2006.

J.    Order of the Hon. Lief M. Clark in Bankruptcy Case No. 05-80116, dated August 10, 2012.

K.    Order of the Hon. Lief M. Clark in Adversary Case No. 11-5141 dated September 24, 2012.

DOCUMENT SCANNED AS FILED



8

DOCUMENT SCANNED AS FILED

From: Sue Umstead <sue@1031corp.com>
To: moroco676 <moroco676@aol.com>
Subject: Rowland Martin
Date: Thu, May 29, 2014 2:48 pm
Attachments: Statement.doc (108K)

---

Rowland,

Attached is the Escrow Account Statement we discussed.

I will be in touch with any additional information I can find.

Sue



SUSAN UMSTEAD, CES®

Senior Vice President | Certified Exchange Specialist®

1031 CORP.

100 Springhouse Drive, Suite 203, Collegeville, PA 19426

Toll-Free: 1.800.828.1031 | Office: 610.792.4880 ext. 208

Mobile: 610.755.8520 | Fax: 610.489.4366

Email: sue@1031CORP.com | www.1031CORP.com

Sign up for our Monthly Newsletter

  

ADVISORY: 1031 CORP. serves as a Qualified Intermediary and cannot provide tax and/or legal advice. Please discuss your particular situation with your tax and/or legal advisor.

DOCUMENT SCANNED AS FILED



## 1031 Corp.
*Full Service Intermediary*

# 1031 CORP. ESCROW ACCOUNT STATEMENT

**Name:** Rowland J. Martin, Jr.

**Case Number:** 7200086872, Commerce Bank

**Taxpayer ID #:** 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

| Date | Type of Transaction | Amount | Balance |
|------|--------------------|--------|---------|
| 6-25-03 | Initial Deposit | $182,238.77 | $182,238.77 |
| 4-28-03 | Withdrawal | $ 2,000.00 | $180,238.77 |
| 8-21-03 | Withdrawal | $ 450.00 | $179,788.77 |
| 10-30-03 | Withdrawal | $135,000.00 | $ 44,788.77 |
| 11-12-03 | Interest | $ 1,155.04 | $ 45,943.81 |
| 11-12-03 | Withdrawal | $ 45,943.81 | $ 0.00 |

## EXPLANATION OF ACCOUNT ACTIVITY

| Date | Transaction | Amount | Explanation |
|------|-------------|--------|-------------|
| 6-25-03 | Deposit | $182,238.77 | Initial Deposit |
| 7-28-03 | Withdrawal | $ 2,000.00 | Earnest money deposit on 1216 West Ave., San Antonio, TX |
| 8-21-03 | Withdrawal | $ 450.00 | Fee for Home Inspection paid to Longhorn Home Inspections |

1200 East High Street, Suite 217, Pottstown, Pennsylvania 19464
(610) 970-1300    1-800-828-1031    FAX# (610) 970-2258

DOCUMENT SCANNED AS FILED

| | | | |
|---|---|---|---|
| 10-30-03 | Withdrawal | $135,000.00 | for inspection of 1216 West Avenue, San Antonio, TX 78201 Wire transfer to First American Title Insurance Company for acquisition of 1216 West Avenue, San Antonio, TX |
| 11-12-03 | Withdrawal | $ 45,943.81 | Wire transfer to Rowland Martin, balance of exchange funds |

# B

DOCUMENT SCANNED AS FILED



**First American Title Company**
*1846 N Loop 1604 W, Suite 101 San Antonio, TX 78248*

PR: SOCENT          Ofc: 1830                DATE:          10/30/2003

                                             RECEIPT NO.:   18305465

# RECEIPT FOR DEPOSIT                        FILE NO.:      TX03246428-SA30

FUNDS IN THE AMOUNT OF: $135,000.00

WERE RECEIVED FROM: 1031 Corp- for buyer-WI

CREDITED TO THE ACCOUNT OF: Other

TYPE OF DEPOSIT: Wire                        REPRESENTING:   Closing Costs-wi

Comments:

Property Location: 1216 West Ave, San Antonio, TX 78213

BY: Gail Harris, 10/30/2003

ESCROW OFFICER: Karin Brown

"The validity of this receipt, for the deposit referenced,
is subject to clearance by the depository financial institution and credit to our account."

Other Copy

DOCUMENT SCANNED AS FILED

To: Janysek, Kristi
Subject: File Number-246428-Address-1216 West Ave (Email Ref=920037075)

File No.: TX03 246428 SA30

Buyer: Moroco Ventures, LLC

Seller: Roy M. Ramspeck

Property Address: 1216 West Ave, San Antonio, TX 78213

You can download Acrobat Reader at http://www.adobe.com/products/acrobat/readstep2.html

Kristi Janysek
Escrow Officer
First American Title Company
Phone: 210-390-3597 Ext.
Fax: 866-739-2652 Ext.

This message contains confidential information intended only for the use of the intended recipient(s) and may contain information that is privileged. If you are not the intended recipient, or the person responsible for delivering it to the intended recipient, you are hereby notified that reading, disseminating, distributing or copying this message is strictly prohibited:

If you have received this message by mistake, please immediately notify us by replying to the message and delete the original message immediately thereafter.

*************************************************************************************************

This message may contain confidential or proprietary information intended only for the use of the addressee(s) named above or may contain information that is legally privileged. If you are not the intended addressee, or the person responsible for delivering it to the intended addressee, you are hereby notified that reading, disseminating, distributing or copying this message is strictly prohibited. If you have received this message by mistake, please immediately notify us by replying to the message and delete the original message and any copies immediately thereafter.

If you received this email as a commercial message and would like to opt out of future commercial messages, please let us know and we will remove you from our distribution list.

Thank you.~
*************************************************************************************************
FAFLD

DOCUMENT SCANNED AS FILED

# C

DOCUMENT SCANNED AS FILED

FA 246428 KF
$26

Doc# 20030288822

## DEED OF TRUST



Date:        October 31, 2003

Grantor:     MOROCO VENTURES, LLC

Grantor's Mailing Address (including county):

        951 Combrano St.
        San Antonio TX 78207

Trustee:     SID LAWRENCE, III

Trustee's Mailing Address (including county):

        P.O. Box 781166
        San Antonio, Bexar County, Texas  78278

Beneficiary:  ROY M. RAMSPECK and ANNETTE G. HANSON, husband and wife

Beneficiary's Mailing Address (including county):

        13527 Crescent Creek Dr.
        San Antonio TX 78231

Note(s)

    Date:  October 31, 2003

    Amount:     One Hundred Forty-Nine Thousand Five Hundred and No/100 Dollars
                ($149,500.00)

    Maker:      Moroco Ventures, LLC

    Payee:      Roy M. Ramspeck and Annette G. Hanson, husband and wife

    Final Maturity Date:        November 1, 2006

    Terms of Payment (optional):      As provided in the note.

Property (including any improvements):

    Lots 1, 2 and 3, Block 50, New City Block 8806, LOS ANGELES HEIGHTS

DEED OF TRUST
C:\MyFiles\Client\Title Company\FA - 1604\Ramspeck Hanson DT.wpd
Page 1 of 6

VOL10406 PG1606

DOCUMENT SCANNED AS FILED

ADDITION, situated in the City of San Antonio, Bexar County, Texas, according to plat thereof recorded in Volume 150, Pages 284-286, of the Deed and Plat Records of Bexar County, Texas, SAVE AND EXCEPT therefrom a tract of land containing 0.00049 of an acre, being 21.51 square feet, more or less, same being out of Lot 1, said tract conveyed to the City of San Antonio by deed dated October 10, 1991, recorded in Volume 5180, Page 1873, Real Property Records of Bexar County, Texas, being more particularly described by metes and bounds as follows:

BEGINNING at an iron rod found at the northwest corner of the said Lot 1, said point being the POINT OF BEGINNING of the herein described tract;

THENCE S 89° 51' 30" E along the south line of West Olmos 10.01 feet to an iron rod set at the Point of Curvature of a curve having a radius of 10.00 feet, a central angle of 90° 03' 30", an arc length of 15.72 feet, and whose radius point bears 90° southerly from said line of West Olmos;

THENCE along the arc of said curve 15.72 feet to an iron rod set on the east line of West Avenue at the Point of Tangency of said curve;

THENCE N 00° 05' 00" E along the east line of West Avenue 10.01 feet to the POINT OF BEGINNING, containing 0.00049 acres (21.51 square feet).

Prior Liens(s) (including recording information): None.

Other Exceptions to Conveyance and Warranty:

Easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded restrictions, reservations, covenants, conditions, oil and gas leases, mineral severances, and other instruments, other than liens and conveyances, that affect the property; rights of adjoining owners in any walls and fences situated on a common boundary; any discrepancies, conflicts, or shortages in area or boundary lines; any encroachments or overlapping of improvements; all rights, obligations, and other matters emanating from and existing by reason of the creation, establishment, maintenance, and operation of any governmental district, agency, or authority.

For value received and to secure payment of the note, Grantor conveys the property to Trustee in trust. Grantor warrants and agrees to defend the title to the property. If Grantor performs all the covenants and pays the note according to its terms, this deed of trust shall have no further effect, and Beneficiary shall release it at Grantor's expense.

VOL 10406 PG 1607

DOCUMENT SCANNED AS FILED

## Grantor's Obligations

Grantor agrees to:

1. keep the property in good repair and condition;
2. pay all taxes and assessments on the property when due;
3. preserve the lien's priority as it is established in this deed of trust;
4. maintain, in a form acceptable to Beneficiary, an insurance policy that:
   a. covers all improvements for their full insurable value as determined when the policy is issued and renewed, unless Beneficiary approves a smaller amount in writing;
   b. contains an 80% coinsurance clause;
   c. provides fire and extended coverage, including windstorm coverage;
   d. protects Beneficiary with a standard mortgage clause;
   e. provides flood insurance at any time the property is in a flood hazard area; and
   f. contains such other coverage as Beneficiary may reasonably require;
5. comply at all times with the requirements of the 80% coinsurance clause;
6. deliver the insurance policy to Beneficiary and deliver renewals to Beneficiary at least ten days before expiration;
7. keep any buildings occupied as required by the insurance policy;
8. if this is not a first lien, pay all prior lien notes that Grantor is personally liable to pay and abide by all prior lien instruments;
9. furnish to Beneficiary annually, before the taxes become delinquent, evidence that all taxes on the property have been paid; and
10. furnish to Beneficiary annually evidence of paid-up casualty insurance naming Beneficiary as an additional loss payee.

## Beneficiary's Rights

1. Beneficiary may appoint in writing a substitute or successor trustee, succeeding to all rights and responsibilities of Trustee.
2. If the proceeds of the note are used to pay any debt secured by prior liens, Beneficiary is subrogated to all of the rights and liens of the holders of any debt so paid.
3. Beneficiary may apply any proceeds received under the insurance policy either to reduce the note or to repair or replace damaged or destroyed improvements covered by the policy.
4. If Grantor fails to perform any of Grantor's obligations, Beneficiary may perform those obligations and be reimbursed by Grantor on demand at the place where the note is payable for any sums so paid, including attorney's fees, plus interest on those sums from the dates of payment at the rate stated in the note for matured, unpaid amounts. The sum to be reimbursed shall be secured by this deed of trust.
5. If Grantor defaults on the note or fails to perform any of Grantor's obligations or if default occurs on a prior lien note or other instrument, and the default continues after Beneficiary gives Grantor notice of the default and the time within which it must be cured, as may be required

DEED OF TRUST
C:\MyFiles\Client\Title Company\FA - 1604\Ramspeck Hanson DT.wpd
Page 3 of 6

DOCUMENT SCANNED AS FILED

by law or by written agreement, then Beneficiary may:

    a.    declare the unpaid principal balance and earned interest on the note immediately due;

    b.    request Trustee to foreclose this lien, in which case Beneficiary or Beneficiary's agent shall give notice of the foreclosure sale as provided by the Texas Property Code as then amended; and

    c.    purchase the property at any foreclosure sale by offering the highest bid and then have the bid credited on the note.

## Trustee's Duties

If requested by Beneficiary to foreclose this lien, Trustee shall:

1.    either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code as then amended;

2.    sell and convey all or part of the property to the highest bidder for cash with a general warranty binding Grantor, subject to prior liens and to other exceptions to conveyance and warranty; and

3.    from the proceeds of the sale, pay, in this order:

    a.    expenses of foreclosure, including a commission to Trustee of 5% of the bid;

    b.    to Beneficiary, the full amount of principal, interest, attorney's fees, and other charges due and unpaid;

    c.    any amounts required by law to be paid before payment to Grantor; and

    d.    to Grantor, any balance.

## General Provisions

1.    If any of the property is sold under this deed of trust, Grantor shall immediately surrender possession to the purchaser. If Grantor fails to do so, Grantor shall become a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

2.    Recitals in any Trustee's deed conveying the property will be presumed to be true.

3.    Proceeding under this deed of trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

4.    This lien shall remain superior to liens later created even if the time of payment of all or part of the note is extended or part of the property is released.

5.    If any portion of the note cannot be lawfully secured by this deed of trust, payments shall be applied first to discharge that portion.

6.    Grantor assigns to Beneficiary all sums payable to or received by Grantor from condemnation of all or part of the property, from private sale in lieu of condemnation, and from damages caused by public works or construction on or near the property. After deducting any expenses incurred, including attorney's fees, Beneficiary may release any remaining sums to Grantor or apply such sums to reduce the note. Beneficiary shall not be liable for failure to collect or to exercise diligence in collecting any such sums.

7.    Grantor assigns to Beneficiary absolutely, not only as collateral, all present and future

DEED OF TRUST
C:\MyFiles\Client\Title Company\FA - 1604\Ramspeck Hanson DT.wpd
Page 4 of 6

21

DOCUMENT SCANNED AS FILED

rent and other income and receipts from the property. Leases are not assigned. Grantor warrants the validity and enforceability of the assignment. Grantor may as Beneficiary's licensee collect rent and other income and receipts as long as Grantor is not in default under the note or this deed of trust. Grantor will apply all rent and other income and receipts to payment of the note and performance of this deed of trust, but if the rent and other income and receipts exceed the amount due under the note and deed of trust, Grantor may retain the excess. If Grantor defaults in payment of the note or performance of this deed of trust, Beneficiary may terminate Grantor's license to collect and then as Grantor's agent may rent the property if it is vacant and collect all rent and other income and receipts. Beneficiary neither has nor assumes any obligations as lessor or landlord with respect to any occupant of the property. Beneficiary may exercise Beneficiary's rights and remedies under this paragraph without taking possession of the property. Beneficiary shall apply all rent and other income and receipts collected under this paragraph first to expenses incurred in exercising Beneficiary's rights and remedies and then to Grantor's obligations under the note and this deed of trust in the order determined by Beneficiary. Beneficiary is not required to act under this paragraph, and acting under this paragraph does not waive any of Beneficiary's other rights or remedies. If Grantor becomes a voluntary or involuntary bankrupt, Beneficiary's filing a proof of claim in bankruptcy will be tantamount to the appointment of a receiver under Texas law.

     8.    Interest on the debt secured by this deed of trust shall not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law; any interest in excess of that maximum amount shall be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess shall be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides other provisions in this and all other instruments concerning the debt.

     9.    When the context requires, singular nouns and pronouns include the plural.

    10.    The term "note" includes all sums secured by this deed of trust.

    11.    This deed of trust shall bind, inure to the benefit of, and be exercised by successors in interest of all parties.

    12.    If Grantor and Maker are not the same person, the term "Grantor" shall include Maker.

    13.    Grantor represents that this deed of trust and the note are given for the following purposes:

> The debt evidenced by the note is in part payment of the purchase price of the property; the debt is secured both by this deed of trust and by a vendor's lien on the property, which is expressly retained in a deed to Grantor of even date. This deed of trust does not waive the vendor's lien, and the two liens and the rights created by this instrument shall be cumulative. Beneficiary may elect to foreclose under either of the liens without waiving the other or may foreclose under both. The deed is incorporated into this deed of trust.

    14.    If all or any part of the property is sold, conveyed, leased for a period longer than three (3) years, leased with an option to purchase, or otherwise sold (including any contract for deed), without the prior written consent of Beneficiary, Beneficiary may declare the balance of the

DEED OF TRUST
C:\MyFiles\Client\Title Company\FA - 1604\Ramspeck Hanson DT.wpd
Page 5 of 6

22

DOCUMENT SCANNED AS FILED

note to be immediately due and payable. The creation of a subordinate lien, any conveyance under threat or order of condemnation, any deed solely between Grantor, the passage of title by reason of the death of a Grantor or by operation of law will not entitle Beneficiary to exercise the remedies provided in this paragraph.

MOROCO VENTURES, LLC

By: _____
Rowland J. Martin, Jr.

STATE OF TEXAS          §

COUNTY OF BEXAR      §

This instrument was acknowledged before me on the __4__ day of __November__, 2003, by Rowland J. Martin, Jr. _____ of MOROCO VENTURES, LLC, a __Texas__ limited liability company, on behalf of said limited liability company.

_____
Notary Public, State of Texas

KARIN BROWN
Notary Public
STATE OF TEXAS
My Comm. Exp. 11-17-2006

AFTER RECORDING RETURN TO:

Roy M. Ramspeck &
Annette G. Hanson
13527 Crescent Creek Dn
San Antonio TX 78231

PREPARED IN THE LAW OFFICE OF:

Sid Lawrence, III
512 Heimer Road
San Antonio, Texas 78232
(210) 495-5560

DEED OF TRUST
C:\MyFiles\Client\Title Company\FA - 1604\Ramspeck Hanson DT.wpd
Page 6 of 6

DOCUMENT SCANNED AS FILED

EXHIBIT "A"

Lots 1, 2 and 3, Block 50, New City Block 8806, LOS ANGELES HEIGHTS ADDITION, situated in the City of San Antonio, Bexar County, Texas, according to plat therec recorded in Volume 150, Page(s) 284-286, of the Deed and Plat Records of Bexar County, Texas, Save and except therefrom a tract of land containing 0.00049 of an acre, being 21.51 square feet, more or less, same being out of Lot 1, said tract conveyed to the City of San Antonio by deed dated October 10, 1991 recorded in Volume 5180, page 1873, Real Property Records of Bexar County, Texas, and being mo. particularly described by metes and bounds as follows:

BEGINNING at an iron rod found at the northwest corner of the said Lot 1, said poi) being the POINT OF BEGINNING of the herein described tract;

THENCE S 89° 51' 30" E. along the south line of West Olmos 10.01 feet to an iron rc set at the Point of Curvature of a curve having a radius of 10.00 feet, a central angle of 90° 03' 30", an arc length of 15.72 feet, and whose radius point bears 90' southerly from said south line of West Olmos;

THENCE along the arc of said curve 15.72 feet to an iron rod set on the east line o West Avenue at the Point of Tangency of said curve;

THENCE N. 00° 05' 00" E. along the east line of West Avenue 10.01 feet to the POIN1 BEGINNING, containing 0.00049 acre (21.51 square feet).

DOCUMENT SCANNED AS FILED

# D

DOCUMENT SCANNED AS FILED

## DEED OF TRUST

Date:  May 3, 2005

Grantor:  Rowland Martin and Moroco Ventures, LLC

Grantor's Mailing Address (including county):  1216 West Avenue, San Antonio, Bexar County, Texas 78201

Trustee:  Louis Martinez

Trustee's Mailing Address (including county):  1727 W. Hildebrand, San Antonio, Bexar County, Texas 78201

Beneficiary:  Albert W. McKnight & Edward L. Bravenec

Beneficiary's Mailing Address (including county):  721 S. Presa, San Antonio, Bexar County, Texas 78210

Note(s)

Date:  May 3, 2005

Amount:  $20,000.00

Maker:  Rowland Martin

Payee:  Albert W. McKnight & Edward L. Bravenec

Final Maturity Date:  When paid in full

Terms of Payment (optional):  Principal and interest shall be due and payable in monthly installments of $500.00 dollars.  Beginning on the 1st day of August 2005 for one year.  After one year $1,000.00 per month until paid in full.  Debtor will provide proof of payment on the 1st Lien Note no later than the 5th of each month beginning on the 5th day of July, 2005. If debtor misses a payment on his first Lien Note then debtor is in default and Trustees are allowed to foreclose Deed of Trust.

Property (including any improvements):

Lots 1, 2 and 3, Block 50, New City Block 8806, LOS ANGELES HEIGHTS ADDITION, situated in the City of San Antonio, Bexar County, Texas, according to plat thereof recorded in Volume 150, Pages 284-286, of the Deed and Plat Records of Bexar County, Texas, SAVE AND EXCEPT therefrom a tract of land containing 0.00049 of an acre,

USCA5 2276

DOCUMENT SCANNED AS FILED

being 21.51 square feet, more or less, same being out of Lot 1, said tract conveyed to the City of San Antonio by deed dated October 10, 1991, recorded in Volume 5180, Page 1873, Real Property Records of Bexar County, Texas, being more particularly described by metes and bounds as follows:

BEGINNING at an iron rod found at the northwest corner of the said Lot 1, said point being the POINT OF BEGINNING of the herein described tract;

THENCE 89°51'30" E along the south line of West Olmos 10.01 feet to an iron rod set at the Point of Curvature of a curve having a radius of 10.00 feet, a central angle of 90° 03' 30", an arc length of 15.72 feet, and whose radius point bears 90° southerly from said line of West Olmos;

THENCE along the arc of said curve 15.72 feet to an iron rod set on the east line of West Avenue at the Point of Tangency of said curve;

THENCE N 00° 05' 00" E along the east line of West Avenue 10.01 feet to the POINT OF BEGINNING, containing 0.00049 acres (21.51 square feet).

Prior Lien(s) including recording information: First Lien Note to Roy M. Ramspeck and Annette G. Hanson dated 31st day of October, 2003 in the original principal amount of $149,500:

Other Exceptions to Conveyance and Warranty: None not of Record

For value received and to secure payment of the note, Grantor conveys the property to Trustee in trust. Grantor warrants and agrees to defend the title to the property. If Grantor performs all the covenants and pays the note according to its terms, this deed of trust shall have no further effect, and Beneficiary shall release it at Grantor's expense.

**Grantor's Obligations**

Grantor agrees to:
1. keep the property in good repair and condition;
2. pay all taxes and assessments on the property when due;
3. preserve the lien's priority as it is established in this deed of trust;
4. maintain, in a form acceptable to Beneficiary, an insurance policy that:

USCA5 2277

27

a. covers all improvements for their full insurable value as determined when the policy is issued and renewed, unless Beneficiary approves a smaller amount in writing;
b. contains an 80% coinsurance clause;
c. provides fire and extended coverage, including windstorm coverage;
d. protects Beneficiary with a standard mortgage clause;
e. provides flood insurance at any time the property is in a flood hazard area; and
f. contains such other coverage as Beneficiary may reasonable require;

5. comply at all times with the requirements of the 80% coinsurance clause;
6. deliver the insurance policy to Beneficiary and deliver renewals to Beneficiary at least ten days before expiration;
7. keep any buildings occupied as required by the insurance policy; and
8. if this is not a first lien, pay all prior lien notes that Grantor is personally liable to pay and abide by all prior lien instruments.

## Beneficiary's Rights

1. Beneficiary may appoint in writing a substitute or successor trustee, succeeding to all rights and responsibilities of Trustee.

2. If the proceeds of the note are used to pay any debt secured by prior liens, Beneficiary is subrogated to all of the rights and liens of the holders of any debt so paid.

3. Beneficiary may apply any proceeds received under the insurance policy either to reduce the note or to repair or replace damaged or destroyed improvements covered by the policy.

4. If Grantor fails to perform any of Grantor's obligations, Beneficiary may perform those obligations and be reimbursed by Grantor on demand at the place where the note is payable for any sums so paid, including attorney's fees, plus interest on those sums from the dates of payment at the rate stated in the note for matured, unpaid amounts. The sum to be reimbursed shall be secured by this deed of trust.

5. If Grantor defaults on the note or fails to perform any of Grantor's obligations or if default occurs on a prior lien note or other instrument, and the default continues after Beneficiary gives Grantor notice of the default and the time within which it must be cured, as may be required by law or by written agreement, then Beneficiary may:

a. declare the unpaid principal balance and earned interest on the note immediately due;
b. request Trustee to foreclose this lien, in which case Beneficiary or Beneficiary's agent shall give notice of the foreclosure sale as provided by the Texas Property Code as then amended; and

USCA5 2278

DOCUMENT SCANNED AS FILED

c. purchase the property at any foreclosure sale by offering the highest bid and then have the bid credited on the note.

**Trustee's Duties**

If requested by Beneficiary to foreclose this lien, Trustee shall:

1. either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code as then amended;

2. sell and convey all or part of the property to the highest bidder for cash with a general warranty binding Grantor, subject to prior liens and to other exceptions to conveyance and warranty; and

3. from the proceeds of the sale, pay, in this order:
a. expenses of foreclosure, including a commission to Trustee of 5% of the bid;
b. to Beneficiary, the full amount of principal, interest, attorney's fees, and other charges due and unpaid;
c. any amounts required by law to be paid before payment to Grantor; and
d. to Grantor, any balance.

**General Provisions**

1. If any of the property is sold under this deed of trust, Grantor shall immediately surrender possession to the purchaser. If Grantor fails to do so, Grantor shall become a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

2. Recitals in any Trustee's deed conveying the property will be presumed to be true.

3. Proceeding under this deed of trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

4. This lien shall remain superior to liens later created even if the time of payment of all or part of the note is extended or part of the property is released.

5. If any portion of the note cannot be lawfully secured by this deed of trust, payments shall be applied first to discharge that portion.

6. Grantor assigns to Beneficiary all sums payable to or received by Grantor from condemnation of all or part of the property, from private sale in lieu of condemnation, and from damages caused by public works or construction on or near the property. After deducting any expenses incurred, including attorney's fees, Beneficiary may release any remaining sums to Grantor or apply such sums to reduce the note. Beneficiary shall not be liable for failure to collect or to exercise diligence in collecting any such sums.

USCA5 2279

DOCUMENT SCANNED AS FILED

7. Grantor assigns to beneficiary absolutely, not only as collateral, all present and future rent and other income and receipts from the property. Leases are not assigned. Grantor warrants the validity and enforceability of the assignment. Grantor may as Beneficiary's licensee collect rent and other income and receipts as long as Grantor is not in default under the note or this deed of trust. Grantor will apply all rent and other income and receipts to payment of the note and performance of this deed of trust, but if the rent and other income and receipts exceed the amount due under the note and deed of trust, Grantor may retain the excess. If Grantor defaults in payment of the note or performance of this deed of trust, Beneficiary may terminate Grantor's license to collect and then as Grantor's agent may rent the property if it is vacant and collect all rent and other income and receipts. Beneficiary neither has nor assumes any obligations as lessor or landlord with respect to any occupant of the property. Beneficiary may exercise Beneficiary's rights and remedies under this paragraph without taking possession of the property. Beneficiary shall apply all rent and other income and receipts collected under this paragraph first to expenses incurred in exercising Beneficiary's rights and remedies and then to Grantor's obligations under the note and this deed of trust in the order determined by Beneficiary. Beneficiary is not required to act under this a paragraph, and acting under this paragraph does not waive any of Beneficiary's other rights or remedies. If Grantor becomes a voluntary or involuntary bankrupt, Beneficiary's filing a proof of claim in bankruptcy will be tantamount to the appointment of a receiver under Texas law.

8. Interest on the debt secured by this deed of trust shall not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law; any interest in excess of that maximum amount shall be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess shall be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides other provisions in this and all other instruments concerning the debt.

9. When the context requires, singular nouns and pronouns include the plural .

10. The term note includes all sums secured by this deed of trust. .

11. This deed of trust shall bind, inure to the benefit of, and be exercised by successors in interest of all parties.

12. If Grantor and Maker are not the same person the term Grantor shall include Maker.

USCA5 2280

DOCUMENT SCANNED AS FILED

13. Grantor specifically states that the property subject to this deed of trust is not his homestead. *Km*

_____
ROWLAND MARTIN
Individually

_____
ROWLAND MARTIN
President, Moroco Ventures, LLC

(Acknowledgement)

STATE OF TEXAS
COUNTY OF BEXAR

This instrument was acknowledged before me on the 3rd day of May 2005 by Rowland Martin individually and Moroco Ventures, LLC by its President Rowland Martin.

_____
ROWLAND MARTIN
Individually

_____
ROWLAND MARTIN
President, Moroco Ventures, LLC

_____
Notary Public in and for the
State of Texas

My Commission Expires: 2-22-2009

AFTER RECORDING RETURN TO:

(

PREPARED IN THE LAW OFFICE OF
McKnight & Bravenec
721 S. Presa
San Antonio, Texas 78210
(210) 223-4080

USCA5 2281

DOCUMENT SCANNED AS FILED

# E

DOCUMENT SCANNED AS FILED

SCANNED





The relief described hereinbelow is SO ORDERED.

Signed June 20, 2006.

Ronald B. King
United States Bankruptcy Judge

United States Bankruptcy Court
Western District of Texas
San Antonio Division

IN RE:

MOROCO VENTURES, LLC,

DEBTOR

Case No. 06-50829 RBK

Chapter 11

**ORDER ON MOTION FOR CONTEMPT
AGAINST LAW OFFICE OF McKNIGHT & BRAVENEC,
ALBERT W. McKNIGHT, AND EDWARD L. BRAVENEC
AND RESPONSE TO DEBTOR'S MOTION FOR CONTEMPT
AND MOTION FOR CONTEMPT AGAINST ROWLAND MARTIN
AND MOROCO VENTURES LLC**

On June 19, 2006 the Motion for Contempt Against Law Office of McKnight & Bravenec, Albert W. McKnight, and Edward L. Bravenec, and the Response to Debtor's Motion for Contempt and Motion for Contempt Against Rowland Martin and Moroco Ventures LLC, came on for consideration by the Court. After hearing the evidence, and the arguments of counsel, the Court makes the following orders. It is

ORDERED, that the Motion for Contempt Against Law Office of McKnight & Bravenec, Albert W. McKnight, and Edward L. Bravenec is denied without prejudice; and it is

FURTHER ORDERED, that the Motion for Contempt Against Rowland Martin and Moroco Ventures LLC is denied without prejudice; and it is

A TRUE COPY I CERTIFY

DEPUTY CLERK

DOCUMENT SCANNED AS FILED

FURTHER ORDERED, that the Substitute Trustee's Deed dated May 2, 2006 from Louis D. Martinez to Albert W. McKnight and Edward L. Bravenec is VOID and the property title to the following described real property is in the name of Moroco Ventures LLC:

> Lots 1, 2, and 3, Block 50, New City Block 8806, LOS ANGELES HEIGHTS ADDITION, situated in the City of San Antonio, Bexar County, Texas, according to plat thereof recorded in Volume 150, Pages 284 – 286 of the Deed and Plat Records of Bexar County, Texas, SAVE AND EXCEPT therefrom a tract of land containing 0.00049 of an acre being 21.51 square feet, more or less, same being out of Lot 1, said tract conveyed to the City of San Antonio by deed dated October 10, 1991, recorded in Volume 5180, Page 1873, Real Property Records of Bexar County, Texas.

### ###

Submitted by:
John M Tutt
10010 San Pedro, Suite 660
San Antonio, TX 78216-3804
(210) 366-9676
(210) 366-0412 fax
jtutt@quixnet.net

Any provision herein which restricts the sale, or use of the described real property because of race is invalid and unenforceable under Federal law
STATE OF TEXAS, COUNTY OF BEXAR
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me and was duly RECORDED in the Official Public Record of Real Property of Bexar County, Texas on:

JUL 07 2006

COUNTY CLERK BEXAR COUNTY, TEXAS

Doc# 20060159615 Fees: $20.00
07/07/2006 12:48PM # Pages 2
Filed & Recorded in the Official Public
Records of BEXAR COUNTY
GERRY RICKHOFF COUNTY CLERK



DOCUMENT SCANNED AS FILED

# F

DOCUMENT SCANNED AS FILED


LT1-77-20080238758-1

**SCANNED**

# CONDOMINIUM DECLARATION OF
# MOROCO VENTURES, LLC
# ESTABLISHING
# "THE DECO VILLAGE ANNEX"

Moroco Ventures, LLC, acting through its sole owner and registered business agent, Rowland J. Martin, Jr., makes the following declaration in support of the establishment of "The Deco Village Annex and Event Center" at the property commonly known alternatively as 1216 West Ave., San Antonio, Texas, and 1830 West Olmos, San Antonio, Texas:

1.      The name of the condominium is "Deco Village Annex, A Condominium Community." The condominium may operate under other fictitious names as may be duly registered in Bexar County by the declarant or by delegation to the unit owner's association.

2.      The name of the unit owners' association is "The Deco Village Owners' Association."

3.      The condominium is located in Bexar County, Texas.

4.      The legal description of the property included in the condominium is the following: NCB 8806 BLK 50 Lot 1 EXC 10.1 FT & 2-3, also known 1216 West Ave and 1830 West Olmos, San Antonio, Texas.

5.      The boundaries and identifying numbers of the four units created by this declaration as shown in Exhibit A are as follows: (a) The boundaries for Suite #101 conform to the existing municipally authorized address Suite #101 on Lots 1 & 2 of NCB 8806 BLK 50, also known as 1216 West Ave.; (b) The boundaries for Suite 102 conform to the existing municipally authorized address for Suite 102 on Lots 1 & 2 of NCB 8806 BLK 50 also known as 1216 West Ave.; (c) The boundaries for Suite 103 conform to the existing municipally authorized Suite 103 on Lots 1 and 2 of NCB 8806 BLK 50 also known as 1216 West Ave., excluding Lot 3; (d) The boundaries for 1830 West Olmos St. conform to the existing municipally authorized address for 1830 West Olmos on Lot 3.

6.      The declarant reserves the right add a maximum of 16 additional units by (a) subdividing 1216 West Ave; and (b) constructing units on the existing structure or adjacent undeveloped land.

7.      The common elements of the condominium include the parking lot, restroom facilities not included in individual units, and hallways not included in individual units.

8.      All or part of the surface area of the roof the existing improvements may be allocated subsequently as limited common elements.

9.      Interests in the following elements will be allocated to each unit: (a) The percentages of the undivided interests in the common elements of the condominium are allocated on a pro rata basis; (b) The percentage of the undivided interests in the common expenses of the association are to be divided on a pro rata basis; and (c) the voting rights in the association are allocated on a pro rata basis.

CERTIFICATE
This page to which this certificate is
affixed in a full, true and correct copy
of the original on file and of record in
my office. ATTESTED. 10/12/06
GERRY RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS
Deputy

LT2-12426-2234-5

DOCUMENT SCANNED AS FILED

10. The development of the condominium and the use of units within it are intended to encourage economic development in San Antonio's Art Deco District and surrounding areas by supporting local and regional creative enterprises and by encouraging investment activities in support of those enterprises. Authority is reserved by the declarant to establish, or to delegate authority to the association to establish, such restrictions on use, occupancy and alienation of units as may be necessary to effectuate the purpose of the condominium.

11. The condominium is subject to an easement in favor the City of San Antonio consisting of 10.1 ft of Lot 1.

12. The declarant reserves the right to amend the declaration and to delegate authority to the association to adopt amendments.

13. A plat for the condominium is shown in Exhibit B. The declarant will submit additional architectural drawings as needed to comply with the Texas Uniform Condominium Act.

14. The association is obligated under Property Code Section 82.11(I) to rebuild or repair any part of the condominium after casualty or to make any other disposition of the proceeds of a casualty insurance policy in that section.

15. The declarant's reservation of the right to construct an additional units for a maximum of 16 units after construction may be exercised as long as the declarant controls a majority of the voting rights in the association.

16. The declarant's construction reservations may be exercised with respect to different parcels of the real property at different times, as to the fixing of boundaries of those portions, the order in which those portions may be subjected to the exercise of development rights, or whether development rights must be exercised in the entire remainder or in any other portion of the remainder of the property.

17. The formula for reallocating the allocated interests among units in the event units are added or withdrawn from the condominium will be established by the declarant or by authority delegated by the declarant to the association.


By _/s/ Rowland Martin/_ Date: 10/2/06

Rowland Martin, Declarant
Owner and Registered Agent, Moroco Ventures, LLC

Acknowledgement

STATE OF TEXAS )
COUNTY OF BEXAR )

This Condominium Declaration was acknowledged before me by Rowland J. Martin, Owner and Business Agent for Moroco Ventures, LLC.

_/s/ Corine Casas/_
Notary Public, State of Texas

CORINE CASAS
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Expires 01-05-2055

CERTIFICATE
This page to which this certificate is affixed in a full, true and correct copy of the original on file and of record in my office. ATTESTED
GERRY RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS
BY Deputy

2

DOCUMENT SCANNED AS FILED



WEST AVE. (60' R.O.W.)

CONC. DRIVE

N 00°22'53" E 10.00' (REC.)
N 00°22'53" E 10.14' (F.M.)

R=10' L=15.77' (F.M.)

*SAVE & EXCEPT
.00049 ACRE
CONVEY TO
CITY OF SAN
ANTONIO
VOL. 5180, PG. 1873

PARKING (ASPH.)

CONC. WALK

86.0'

LOT 1

NOTE: 2.2' ENCROACHMENT OF 25' BLDG. SETBACK

1-STY. BLDG. # 1830-1832

LOT 2

BLK. 50
NCB 8806

49.1'

20.0'

47.3'

PARKING

LOT 3

ASPH.

120.0'

S 00°09'00" W 120.00' (REC.)
S 00°23'53" W 120.15' (F.M.)

LOT 23

W. OLMOS DRIVE (PLATTED McILVAINE ST.)

S 69°51'30" E 150.00' (REC.)
S 69°51'30" E 140.00' (F.M.)

45' R.O.W.

(BASIS OF BEARING)

15' BLDG. SETBACK

CONC. DRIVE

FND 1/2" I.R.

FND. 1/2" I.R.

SUBJECT TO:
VOL. 1641, PG. 47
25' BLDG. SETBACK VOL. 429, PG. 160
* SAVE & EXCEPT VOL. 5180, PG. 1873

LOT NO. 1, 2, 3 BLOCK NO. 50 N.C.B. 8806 ADDITION OR SUBDIVISION LOS ANGELES HEIGHTS ADDITION
SECTION
UNIT _____ PHASE _____ VOLUME 105 PAGE 284-286 DEED AND PLAT RECORDS OF
ROY M. RAMSPECK                                                           BEXAR COUNTY, TEXAS
REFERENCE NAME ANNETTE G. HANSON STREET ADDRESS 1830-1832 W. OLMOS DR.
CITY SAN ANTONIO COUNTY BEXAR STATE OF TEXAS

TO THE LIENHOLDER AND/OR OWNERS OF THE PREMISES SURVEYED AND TO

FIRST AMERICAN TITLE

I HEREBY CERTIFY THAT THIS SURVEY WAS THIS DAY MADE ON THE GROUND UNDER MY SUPERVISION OF THE PROPERTY LEGALLY DESCRIBED HEREON AND IS CORRECT AND THERE ARE NO VISIBLE ENCROACHMENTS OR EASEMENTS UNLESS SHOWN

ONLY THOSE PRINTS CONTAINING THE SURVEYOR'S ORIGINAL SIGNATURE AND SEAL SHOULD BE CONSIDERED OFFICIAL AND RELIED UPON BY THE USER.
THIS DOCUMENT IS PREPARED SPECIFICALLY FOR THE PARTIES DESIGNATED HEREON. MODIFICATION, ALTERATION, DUPLICATION, OR USE WITHOUT THE PRIOR CONSENT OF LANDATA FIELD SERVICES IS PROHIBITED.

**LANDATA FIELD SERVICES**
SAN ANTONIO DIVISION

2929 Mossrock Drive, Ste. 120, San Antonio, Tx. 78230
Tel.: (210) 341-1408    Fax.: (210) 377-0667

SCALE 1" = 20'
DATE 5-12-97
SURVEYED BY: P.C.
DRAWN BY: H.P.
CF #: 97-4098.TG
APPROVED BY:

NO. REVISION DATE
JOB NO. 5-99-77
DWG. NO.

CERTIFICATE
This page to which this certificate is affixed in a full, true and correct copy of the original on file and of record in my office. ATTESTED

GERRY RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS
BY _____ Deputy

DOCUMENT SCANNED AS FILED



1206 West Ave

#101  #102

W. Olmos Dr

1830 West Olmos

CERTIFICATE
This page to which this certificate is
affixed in a full, true and correct copy
of the original on file and of record in
my office. ATTESTED 10/12/06
GERRY RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS
BY Deputy

RECORDER'S MEMORANDUM
AT THE TIME OF RECORDATION THIS
INSTRUMENT WAS FOUND TO BE INADEQUATE
FOR THE BEST PHOTOGRAPHIC REPRODUCTION
BECAUSE OF ILLEGIBILITY, CARBON OR
PHOTO COPY DISCOLORED PAPER ETC.

Any provision herein which restricts the sale, or use of the described real property because of race is invalid and unenforceable under Federal law
STATE OF TEXAS, COUNTY OF BEXAR
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me and was duly RECORDED, in the Official Public Record of Real Property of Bexar County, Texas on:

OCT - 2 2006

COUNTY CLERK BEXAR COUNTY, TEXAS

Doc# 20060238758 Fees: $32.00
10/02/2006    2:24PM # Pages 5
Filed & Recorded in the Official Public
Records of   BEXAR COUNTY
GERRY RICKHOFF COUNTY CLERK

CERTIFICATE
This page to which this certificate is
affixed in a full, true and correct copy
of the original on file and of record in
my office. ATTESTED
GERRY RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS
BY                    Deputy

40

DOCUMENT SCANNED AS FILED

# Gerry Rickhoff



COUNTY CLERK       BEXAR COUNTY

BEXAR COUNTY COURT HOUSE
SAN ANTONIO, TEXAS 78205

## C E R T I F I C A T E

STATE OF TEXAS      §

COUNTY OF BEXAR      §

I, GERRY RICKHOFF, COUNTY CLERK OF BEXAR COUNTY, TEXAS, DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT COPY OF THE OFFICIAL PUBLIC RECORDS OF REAL PROPERTY OF BEXAR COUNTY, TEXAS, NOW IN MY LAWFUL CUSTODY AND POSSESSION AS SAME APPEARS OF RECORD FILED IN:

VOLUME _12426_      PAGE _2234_

IN TESTIMONY WHEREOF, WITNESS MY HAND AND OFFICIAL SEAL OF OFFICE GIVEN IN THE CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS, ON THIS _12th_ DAY OF _October_ A.D., 20_06_

GERRY RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY _Zaldsa S. Esquivel_
Deputy County Clerk

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF RACE, COLOR, RELIGION, SEX, HANDICAP, FAMILIAL STATUS OR NATIONAL ORIGIN IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.

DOCUMENT SCANNED AS FILED

# G

DOCUMENT SCANNED AS FILED

SCANNED

## SUBSTITUTE TRUSTEE'S DEED

**Date:** October 3, 2006

**Substitute Trustee:** Louis D. Martinez



**Deed of Trust**

> **Date:** 3 May 2005
> **Grantor:** Moroco Ventures LLC
> **Lender:** Albert W. McKnight and Edward L. Bravenec
> **Recording information:** Vol 11578, Page 940 in Bexar County

**Property:**

Lots 1, 2, and 3, Block 50, New City Block 8806, LOS ANGELOS HEIGHTS ADDITION, Situated in the City of San Antonio, Bexar County, Texas according to plat thereof recorded in Volume 150, Pages 284-286, of the Deed and Plat Records of Bexar County, Texas, SAVE AND EXCEPT therefrom a tract of land containing 0.00049 of an acre being 21.51 square feet, more or less, same being out of Lot 1, said tract conveyed to the City of San Antonio, by deed dated October 10, 1991, recorded in Volume 5180, Page 1873, Real Property Records of Bexar County, Texas.

**Note**

> **Date:** October 3, 2006
> **Principal amount:** 20,000.00
> **Borrower:** Momco Ventures LLC
> **Lender:** Albert W. McKnight and Edward L. Bravenec
> **Holder:** Albert W. McKnight and Edward L. Bravenec

**Date of Sale (first Tuesday of month):** 2 May 2006

**Time of Sale:** 2:30 PM

**Place of Sale:** Bexar County Courthouse, San Antonio, Bexar County, Texas 78205

**Buyer:** Albert W. McKnight and Edward L. Bravenec

**Buyer's Mailing Address:**

> Albert W. McKnight and Edward L. Bravenec
> 721 S. Presa
> San Antonio, TX 78210



**Amount of Sale: $49,500.00**

**Note**   Grantor has defaulted in performing the obligations of the Deed of Trust. Holder of the

Notices giving the requisite opportunity to cure and stating the time, place, and terms of sale of the Property were sent, posted, and filed the prior Trustee either personally or by agent served notice of the sale to each debtor, as required by the Texas Property Code, See Exhibit "A." In accordance with the Texas Property Code and the Deed of Trust, Substitute Trustee sold the Property to Buyer, who was the highest bidder at the public auction, for the Amount of Sale. The sale was made on the Date of Sale, began at the Time of Sale, and was concluded by 12:15 o'clock P.M.

Substitute Trustee, subject to any prior liens, obligations for taxes, and other exceptions to conveyance and warranty in the Deed of Trust and for the Amount of Sale paid by Buyer as consideration, grants, sells, and conveys the Property to Buyer, together with all and singular the rights and appurtenances thereto in any way belonging, to have and to hold it to Buyer and Buyer's heir, successors, and assigns forever. Substitute Trustee binds Grantor and Grantor's heirs and successors to warrant and forever defend all and singular the Property to Buyer and Buyer's heirs, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the prior liens and other exceptions to conveyance and warranty in the Deed of Trust.

GRANTEE ACKNOWLEDGES THAT GRANTOR HAS NOT MADE AND DOES NOT MAKE ANY REPRESENTATIONS AS TO THE PHYSICAL CONDITION, OR ANY OTHER MATTER AFFECTING OR RELATED TO THE PROPERTY OR ANY IMPROVEMENTS THEREON (OTHER THAN WARRANTIES OF TITLE AS EXPRESSLY PROVIDED AND LIMITED HEREIN). GRANTEE EXPRESSLY AGREES THAT, TO THE MAXIMUM EXTENT PERMITTED BY LAW, THE PROPERTY AND ANY IMPROVEMENTS COMPRISING A PORTION THEREOF ARE CONVEYED, "AS IS" AND "WITH ALL FAULTS," AND GRANTOR EXPRESSLY DISCLAIMS, AND GRANTEE ACKNOWLEDGES AND ACCEPTS THAT GRANTOR HAS DISCLAIMED, ANY AND ALL REPRESENTATIONS, WARRANTIES OR GUARANTIES, OF ANY KIND (ORAL, EXPRESSLY PROVIDED OR LIMITED), CONCERNING THE PROPERTY AND ANY IMPROVEMENTS COMPRISING A PORTION THEREOF, INCLUDING WITHOUT LIMITATION, (I) THE VALUE, CONDITION, MERCHANTABILITY, HABITABILITY, MARKETABILITY, PROFITABILITY, SUITABILITY OR FITNESS FOR A PARTICULAR USE OR PURPOSE, OF THE PROPERTY AND ANY IMPROVEMENTS THEREON, (II) THE MANNER OR QUALITY OF THE CONSTRUCTION OR MATERIALS INCORPORATED INTO ANY SUCH IMPROVEMENTS AND (III) THE MANNER OF REPAIR, QUALITY, STATE OF REPAIR OR LACK OF REPAIR OF ANY SUCH IMPROVEMENTS. GRANTOR HAS NOT, DOES NOT AND WILL NOT MAKE ANY REPRESENTATIONS OR WARRANTIES WITH REGARD TO COMPLIANCE WITH ANY ENVIRONMENTAL PROTECTION, POLLUTION OR LAND USE LAWS, RULES, REGULATIONS, ORDERS OR REQUIREMENTS INCLUDING BUT NOT LIMITED TO THOSE PERTAINING TO THE USE, HANDLING, GENERATING, TREATING, STORING OR DISPOSING OF ANY HAZARDOUS WASTE, HAZARDOUS SUBSTANCES, PETROLEUM PRODUCT STORAGE TANKS OR ASBESTOS. THE PROVISIONS CONTAINED IN THIS PARAGRAPH SHALL SURVIVE DELIVERY OF THE DEED. GRANTEE ACCEPTS THE PROPERTY "AS IS," "WHERE IS," AND WITH ALL FAULTS, WITH NO WARRANTIES, EITHER EXPRESS OR IMPLIED, AND WITH NO LIABILITY AS A RESULT OF THIS TRANSACTION. GRANTEE HAS MADE ITS OWN INDEPENDENT INSPECTION OF ALL ASPECTS OF THE PROPERTY AND SHALL HAVE NO RECOURSE WHATSOEVER AGAINST GRANTOR IN THE EVENT OF DISCOVERY OF ANY DEFECTS OF ANY KIND, LATENT OR PATENT. THIS WARRANTY DISCLAIMER SHALL NOT DIMINISH ANY WARRANTIES OF TITLE MADE BY GRANTOR IN THIS DEED.

_____

LOUIS A. MARTINEZ, Substitute Trustee under the Deed of Trust
1727 W. Hildebrand Ave
San Antonio, TX 78201
(210) 222-8785

44

## FORECLOSURE SALE TRANSCRIPT

The following transcript covers the foreclosure sale conducted beginning at 12:00 o'clock noon on October 3, 2006, at 100 Dolorosa, San Antonio, Texas 78205 of the County Courthouse in Bexar County, Texas, on the foreclosure of the deed of trust. LOUIS MARTINEZ, Substitute Trustee, attends the Foreclosure sale to act as bidder at the sale.

1.  I am LOUIS MARTINEZ. My business address is 1727 W. Hildebrand Ave, San Antonio, TX 78201. I have been appointed Substitute Trustee to conduct this nonjudicial deed of trust and security interest foreclosure sale.

2.  This sale is a nonjudicial foreclosure sale being conducted pursuant to the power of sale granted by a deed of trust and security interest executed by MOROCO VENTURES LLC. The deed of trust is dated 3 May 2005, and is recorded in volume 11578, page 940, of the Real Property Records of Bexar County, Texas. The sale is the sale of certain real property referred to as the "Mortgaged Property" in the lien documents.

Those desiring to purchase the property being sold at this sale will need to demonstrate their ability to pay cash for the property being sold.

This sale is being conducted as an auction to the highest bidder for cash. If the highest bidder does not have cash on hand equal to his or her bid, this sale will be adjourned to 12:30 P.M. or such other time as the Substitute Trustee may agree and announce, to permit the highest bidder an opportunity to produce the cash bid. If you are not the highest bidder, you should reappear at the time of the reconvened sale to verify that the highest bidder produced the cash bid, or, if the apparent highest bidder does not produce the cash, to bid again on the property being sold. You must be prepared to pay cash at any reconvened sale.

ALBERT W. MCKNIGHT and EDWARD L. BRAVENEC intend to bid at the sale. Bids entered by Mortgagee at the sale will be by credits against the obligations secured by the deed of trust.

This encumbrance of the deed of trust was made subject to the following matters affecting title: Taxes not paid.

Trustee is aware that taxes were not paid -- how much, I don't know.

I would now like anyone who desires to bid at this sale to identify themselves.

Additionally, I request that any persons observing this sale who are willing to have their attendance recorded let me know who they are.

3.  The following persons identified themselves as either bidders or attendees:
    a.  Albert W. McKnight      (210) 223-4080 -Bidder

4.  By the deed of trust and security interest dated 5 May 2006, recorded in volume 11578, page 940, of the Real Property Records of Bexar County, Texas. MOROCO VENTURES LLC encumbered the following described property to secure certain indebtedness and obligations owed by MOROCO VENTURES LLC LLC to ALBERT W. MCKNIGHT and EDWARD L. BRAVENEC; together with all improvements, fixtures, and appurtenances thereto:

Lots 1, 2, and 3, Block 50, New City Block 8806, LOS ANGELOS HEIGHTS ADDITION, Situated in the City of San Antonio, Bexar County, Texas according to plat thereof recorded in Volume 150, Pages 284-286, of the Deed and Plat Records of Bexar

45

DOCUMENT SCANNED AS FILED

County, Texas, SAVE AND EXCEPT therefrom a tract of land containing 0.00049 of an acre being 21.51 square feet, more or less, same being out of Lot 1, said tract conveyed to the City of San Antonio, by deed dated October 10, 1991, recorded in Volume 5180, Page 1873, Real Property Records of Bexar County, Texas.

The deed of trust was executed by MOROCO VENTURES LLC LLC, the mortgagor, to secure the payment of the note executed by MOROCO VENTURES LLC, (debtor), payable to the order of ALBERT W. MCKNIGHT and EDWARD L. BRAVENEC, which note was dated 5 May 2005, and is in the original principal amount of $20,000.00.

The deed of trust additionally secured all renewals and extensions of this indebtedness together with any and all present and all future indebtedness and obligations of the debtor to the mortgagee.

5.   MOROCO VENTURES LLC has defaulted in the payment and performance of the obligations to ALBERT W. MCKNIGHT and EDWARD L. BRAVENEC, the successor beneficiary under the deed of trust and the noteholder, have requested me, as the Substitute Trust, to conduct this sale.

6.   Notice of this public sale has been given as required by the deed of trust and by law. Notice of this sale has been posted on the notice board at the county courthouse of Bexar County, Texas, and with the county clerk at least twenty-one days preceding the date of this sale. Notice of this sale has additionally been given to each obligor of the indebtedness secured by the deed of trust at least twenty-one days in advance of this sale.

7.   Are there any questions?

8.   A deed to this property will be delivered by the Substitute Trustee to the successful bidder. A copy of the proposed foreclosure sale deed is available for inspection.

9.

   a.   This sale is now opened for bids.

   b.   The following bids were made over the bidding process:

      1.   Albert W. McKnight for Albert W. McKnight and Edward L. Bravenec in the amount of $49,500.00 including accrued interest and other fees.

   c.   There were no additional bids.

   d.   The Mortgaged Property and Collateral are sold to Albert W. McKnight and Edward L. Bravenec, the highest bidders, who bid $49,500.00. They bid the notes outstanding balance no excess proceeds.

L. D. W____

Louis Martinez, Substitute Tru

OCT 03 2006

COUNTY CLERK BEXAR COUNTY, TEXAS

DOCUMENT SCANNED AS FILED

STATE OF TEXAS

COUNTY OF BEXAR

§
§
§

This instrument was acknowledged before me on 3rd of October, 2006, by LOUIS MARTINEZ, Substitute Trustee.

R. GONZALES
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 06-30-2008

Notary Public, State of Texas

AFTER RECORDING RETURN TO:

ALBERT W. MCKNIGHT
EDWARD L. BRAVENEC
721 S. Presa
San Antonio, TX 78210

DOCUMENT SCANNED AS FILED

# H

DOCUMENT SCANNED AS FILED



Cause No. 2006-CI-15329

| ALBERT MCKNIGHT | § | IN THE DISTRICT COURT |
| AND | § | BEXAR COUNTY |
| EDWARD BRAVENEC | § | |
| | § | |
| VS | § | |
| | § | |
| RELIANT FINANCIAL INC. | § | |
| AND | § | 57TH JUDICIAL DISTRICT |
| CAROLYN A. TAYLOR | § | |
| HUGHES, WATTERS | § | |
| & ASKANASE | § | |

## AMENDED
## AGREED ORDER OF DISMISSAL

In return for the receipt of a payoff amount of $172,163.42 on October 13, 2006, Reliant Financial, Inc. agrees to a release of lien pursuant to the Deed of Trust securing the note on 1216 West Avenue, San Antonio, Texas to Albert W. McKnight and Edward L. Bravenec.

The Court, after examining the pleadings and the proposed agreement, finds that this settlement is fair and equitable to each side. Therefore, the above agreement is approved, and the above -styled cause is hereby dismissed. Each side to bear their own costs.

It is so ORDERED.

Signed this _____30_____ day of October, 2006.

PRESIDING JUDGE John D. Gabriel

Dominique M. Varner  Rob Valdespino
TBA# 00791182
Hughes, Watters & Askanase, L.L.P.
Three Allen Center
333 Clay, 29th Floor
Houston, TX 77002
(713) 759-0818

Albert W. McKnight
TBA#

Edward Bravenec
TBA #
721 S. Presa
San Antonio, Texas 78210
(210) 223-4080

14-50093.71

DOCUMENT SCANNED AS FILED

# I

DOCUMENT SCANNED AS FILED

## CAUSE NO. 2006-CI-15329

| | |
|---|---|
| ROWLAND MARTIN D/B/A DECO VILLAGE ANNEX ) | IN THE DISTRICT COURT |
| ) | |
| ) | BEXAR COUNTY |
| VS ) | |
| ) | |
| ALBERT McKNIGHT ) | |
| AND ) | |
| EDWARD BRAVENEC, ET AL ) | |
| ) | |
| AND ) | |
| ) | |
| CAROLYN TAYLOR AND OTHER ) | |
| SUBSTITUTE TRUSTEES OF AEGIS ) | |
| MORTGAGE COMPANY ) | |
| ) | |
| IN RE MOROCO VENTURES, LLC ) | 57TH JUDICIAL DISTRICT |

### ORDER DENYING RESTRAINING ORDER AND TEMPORARY INJUNCTION

On the 30th day of October came on to be heard the Motion of Roland Martin and Moroco Ventures for Temporary Restraining Order restraining Albert McKnight and Edward Bravenec from taking possession of the property known as 1216 West Avenue in the City of San Antonio, Texas.

Movant alleged that there were no irregularities in the foreclosure and purchase of said property. The court finds that the foreclosure took place on the 3rd of October 2003.

The court, after hearing the argument of council and Roland Martin representing himself and Moroco Ventures, denies both Movants' right to intervene and finds that the foreclosure having taken place on the 3rd day of October, 2006 is valid.

Signed this ___1___ day of November, 2006.

John D. Gabriel
Judge Presiding

14-50093.72

DOCUMENT SCANNED AS FILED

# J

DOCUMENT SCANNED AS FILED

The clerk shall file this order in the main bankruptcy case as well as in this adversary proceeding.

**SO ORDERED.**

**SIGNED this 10th day of August, 2012.**



LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE

IN THE U.S. BANKRUPTCY COURT
FOR THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| Rowland J. Martin<br>Plaintiff | ) | Adversary Case 11-05141-LMC |
| | ) | |
| v. | ) | |
| | ) | |
| Edward Bravenec<br>Defendant | ) | |
| | ) | |
| In Re ROWLAND J. MARTIN, JR.,<br>DEBTOR | ) | Case No. 05-80116-LMC |

### AMENDED ORDER REOPENING BANKRUPTCY CASE NO. 05-80116-LMC

The Court, having considered *"Debtor's Motion For Relief From The Bankruptcy Court's Order Of July 28, 2011 And To Compel Turnover Of Assets,"* finds that the post-petition foreclosure of involving the property at 1216 West Ave., in San Antonio, Texas, an asset of the Chapter 11 estate in Bankruptcy Case 06-50829 on October 3, 2006, is subject to this Court's *in custodio legis* authority

028573   53

72705028601011

DOCUMENT SCANNED AS FILED

under Bustamonte v. Cueva, 2004, 371 F.3d 232, rehearing denied U.S. App. LEXIS 11719 (5th Cir. Tex., June 14, 2004) *cited in* Ashley Place, Inc. v. Nicholson, 2007 U.S. Dist. LEXIS 24801 (W.D. Tex. 2007) (Civil Action No. SA-06-CV-999-XR), and that the Debtor has demonstrated standing as a purchase money creditor of former Debtor in Possession Moroco Ventures, LLC. Therefore, the Court finds that the Debtor's motion for further proceeding in the above Adversary Case 11-05141-LMC should be **GRANTED** in part, and designated for hearing in part, pursuant to Bankruptcy Code Sections 105, 362, and 542. **IT IS THEREFORE,**

**ORDERED**, *"Debtor's Motion For Relief From The Bankruptcy Court's Order Of July 28, 2011 And To Compel Turnover Of Assets,"* is hereby granted in part to authorize *nunc pro tunc* relief from the Court's Order of July 28, 2011 in Bankruptcy Case No. 05-80116-LMC, and

**IT IS FURTHER ORDERED**, that the Debtor is authorized to prosecute turnover relief in the above Adversary Case Adversary Case 11-05141-LMC, based on his standing as a purchase money creditor of former Debtor in Possession Moroco Ventures, LLC, and that Edward Bravenec, 1216 West Ave., Inc., Bailey Street Properties, Inc., the Law Office of McKnight and Bravenec, and the Law Firm of Hughes Watters Askanase are designated as Respondents and Defendants in this matter.

### ###

DOCUMENT SCANNED AS FILED

# C

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DIMITRI CHARALAMBOPOULOS, §
§
Plaintiff-counterdefendant, §
§ Civil Action No. 3:14-CV-2424-D
VS. §
§
CAMILLE GRAMMER, §
§
Defendant-counterplaintiff. §

MEMORANDUM OPINION
AND ORDER

In this removed action brought against an American television personality by her former boyfriend—whom she has accused of assaulting and stalking her—the court must analyze and apply the Texas Citizens' Participation Act ("TCPA"), Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001-27.011 (West Supp. 2014), an anti-SLAPP statute.[1] Plaintiff-counterdefendant Dimitri Charalambopoulos ("Charalambopoulos") sues defendant-counterplaintiff Camille Grammer ("Grammer") to recover on claims for defamation, defamation per se, malicious prosecution, negligence, gross negligence, fraud, and intentional infliction of emotional distress ("IIED"). Grammer moves to dismiss under the TCPA, to stay discovery, and for a hearing on her motion to dismiss. Charalambopoulos moves the

---

[1]SLAPP is an acronym for strategic lawsuit against public participation. *See, e.g., In re Lipsky*, 411 S.W.3d 530, 536 n.1 (Tex. App. 2013, orig. proceeding) ("Chapter 27, also known as the Texas Citizens' Participation Act, is 'considered to be anti-SLAPP legislation. SLAPP stands for Strategic Lawsuit Against Public Participation, and approximately twenty-seven states have enacted anti-SLAPP legislation.'" (quoting *Jennings v. WallBuilder Presentations, Inc.*, 378 S.W.3d 519, 521 & n.1 (Tex. App. 2012, pet. denied)).


AUTHENTICATED
U.S. GOVERNMENT
INFORMATION
GPO

the privilege, the burden shifts to the plaintiff to prove that the defendant made the statements with actual malice." *Burbage v. Burbage*, 447 S.W.3d 249, 254 (Tex. 2014) (citing *Dun & Bradstreet, Inc. v. O'Neil*, 456 S.W.2d 896, 898 (Tex. 1970)). "Actual malice, in the defamation context, means 'the making of a statement with knowledge that it is false, or with reckless disregard of whether it is true.'" *Id.* (quoting *Hagler v. Proctor & Gamble Mfg. Co.*, 884 S.W.2d 771, 772 (Tex. 1994) (per curiam)). ·

Grammer has failed to prove that her statements to Officer Vo were qualifiedly privileged. Grammer contends that she can establish the absence of malice on the basis that Charalambopoulos is collaterally estopped from arguing that he did not abuse her. The court concludes below that Grammer has failed to establish that the doctrine of collateral estoppel applies. Because Grammer has not adduced any other evidence to prove the absence of malice, the court concludes she is not entitled to dismissal under § 27.005(d) of Charalambopoulos' defamation claims based on Grammer's statements to Officer Vo.

D

1

Grammer contends that Charalambopoulos' claims based on the assertion that she fabricated the allegations of assault are barred under the doctrine of collateral estoppel because, in issuing the Restraining Order, the Los Angeles County Superior Court found by a preponderance of the evidence that Charalambopoulos had "engaged in a past act of abuse against Grammer." D. Br. 15. Grammer posits that Charalambopoulos is collaterally estopped from relitigating the issue of whether he engaged in the conduct that Grammer

- 60 -

alleged occurred on the morning of October 16, 2013, and that "he cannot impugn the California court's determination by asserting claims premised on the factual contention that he did not engage in such conduct and that Grammer fabricated the allegations of assault." *Id.* at 15-16.

Charalambopoulos responds that the claims in this lawsuit are not "identical" to those in the California action; that the case on which Grammer relies, *Ritchie v. Konrad*, 10 Cal. Rptr. 3d 387 (Cal. Ct. App. 2004), expressly limits itself to the *renewal* of a restraining order and does not announce any sweeping collateral estoppel of civil actions brought on defamation or malicious prosecution claims; and that, in any event, an equitable exception to collateral estoppel applies because Grammer fraudulently obtained the Restraining Order by presenting false testimony.

2

"To determine the preclusive effect of a state court judgment in a federal action, federal courts must apply the law of the state from which the judgment emerged." *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 (5th Cir. 2006) (citation and internal quotation marks omitted). Under California law, collateral estoppel applies when (1) the issue sought to be precluded from relitigation is identical to one decided in a former proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue was necessarily decided in the former proceeding; (4) the decision in the former proceeding is final and based on the merits; and (5) the party against whom preclusion is sought is the same as, or in privity with, the party to the former proceeding. *Lucido v. Superior Court*, 795 P.2d 1223, 1225 (Cal. 1990).

- 61 -

Grammer contends that, in issuing the Restraining Order, the Los Angeles County Superior Court was required to find by a preponderance of the evidence that Charalambopoulos had engaged in a past act of abuse against Grammer.[29] In support, she cites the minutes from a January 6, 2014 hearing, which state, in pertinent part: "The Court grants petitioner's request for domestic violence restraining order based on a preponderance of the evidence, for a period of three years. Restraining Order after Hearing is signed and filed this date. Order expires on January 6, 2017." D. App. 73. These minutes do not establish by a preponderance of the evidence, however, that the remaining issues to be litigated here—e.g., whether the allegedly defamatory statements Grammer made about Charalambopoulos to Officer Vo were true—is identical to one that was necessarily decided in the California proceedings. Because the minutes are not specific in this respect, and because Grammer offers no other evidence that would enable the court to identify the issues that the Los Angeles County Superior Court actually decided in issuing the Restraining Order, Grammer has failed to establish each essential element of the defense of collateral

---

[29]The Domestic Violence Prevention Act ("DVPA"), Cal. Fam. Code Ann. § 6200 *et seq.*, authorizes the court to issue a restraining order for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved, if an affidavit or testimony shows, "to the satisfaction of the court, reasonable proof of a past act or acts of abuse." Cal. Fam. Code Ann. § 6300. "Abuse" is defined as intentionally or recklessly causing or attempting to cause bodily injury, sexual assault, or placing a person "in 'reasonable apprehension of imminent serious bodily injury'" to that person or to another. *Gonzalez v. Munoz*, 67 Cal. Rptr. 3d 317, 322 (Cal. Ct. App. 2007) (quoting Cal. Family Code § 6203). Courts construe the DVPA liberally, and may issue a domestic violence restraining order when the applicant makes the required showing by a preponderance of the evidence. *See Gdowski v. Gdowski*, 95 Cal. Rptr. 3d 799, 805 (Cal. Ct. App. 2009).

estoppel. *See, e.g., People v. Sterling*, 2002 WL 1998213, at *5 (Cal. Ct. App. 2002) ("[W]ithout persuasive evidence of the *ground* of Judge Arnason's ruling, [the court could not] conclude that the [issue raised in present case] was the same issue as that actually ruled on [in case before Judge Arnason]. As [defendant] had the burden of proof on this issue, he has failed to establish this essential element of collateral estoppel."). Accordingly, Grammer is not entitled to dismissal of Charalambopoulos' claims on this basis.

XIV

Grammer moves under § 27.003(c) to stay all discovery in this case until the court decides her motion to dismiss under the TCPA. She has also filed an unopposed motion for a hearing on her motion to dismiss.

The court denies Grammer's motion to stay discovery, in part as moot and in part because the court is permitting Charalambopoulos to conduct specified and limited discovery under § 27.006(b). The motion is moot in part because discovery has been stayed while the motion to dismiss has been pending, and, except as permitted under this memorandum opinion and order, it will remain stayed until the court enters a final decision on the remaining defamation claims that are covered by the TCPA. It is denied in part because the court is allowing Charalambopoulos to conduct some discovery. Under § 27.003(c), the suspension of discovery during the pendency of a motion to dismiss does not apply when discovery is allowed under § 27.006(b).

The court also denies Grammer's motion for a hearing. Although the motion is unopposed, and although § 27.004 provides for a hearing and imposes time limits on when

- 63 -

## NO. 2012CR2973

| STATE OF TEXAS | § | IN THE DISTRICT COURT |
|---|---|---|
| | § | |
| vs. | § | 226TH JUDICIAL DISTRICT |
| | § | |
| LEE VALDEZ | § | BEXAR COUNTY, TEXAS |

### APPEARANCE OF COUNSEL

**TO THE HONORABLE JUDGE OF SAID COURT:**

Now comes Gerald Kubena and hereby files this appearance as attorney of record for Lee Valdez, Defendant. Defendant, Lee Valdez, retained Gerald Kubena, and he consents to Gerald Kubena's appearance as attorney of record in this cause.

Respectfully submitted,

Office of Gerald Kubena
606 N. Presa, No. 303
San Antonio, TX 78205
(210) 290-7339

_____
Gerald Kubena
State Bar No. 00794122
Attorney for Lee Valdez

Consented to,

_____
Lee Valdez, Defendant

### CERTIFICATE OF SERVICE

This is to certify that on March ____, 2015, a true and correct copy of the above and foregoing document was served on the District Attorney's Office, Bexar County, 300 Dolorosa, San Antonio, TX 78205, by hand delivery.

_____
Gerald Kubena

D

# CERTIFIED FOR PARTIAL PUBLICATION[*]

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| PARK 100 INVESTMENT GROUP II, etc., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> GREGORY R. RYAN et al., <br><br> Defendants and Appellants. | B208189 <br><br> (Los Angeles County <br> Super. Ct. No. BC385309) |

APPEAL from an order of the Superior Court of Los Angeles County, Charles C. Lee, Judge. Reversed.

Lewis Brisbois Bisgaard & Smith, Roy G. Weatherup, Bartley L. Becker and Barry Zoller for Defendants and Appellants.

Freedman & Taitelman, Bryan J. Freedman, Jacqueline C. Brown and Bradley H. Kreshek for Plaintiff and Respondent.

---

[*]     Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part IV, B. 3.

# I.

## INTRODUCTION

The defendants in this case are attorneys who, in the course of representing a real property owner in a prior lawsuit involving an easement dispute, filed a lis pendens on a dominant tenement. The owners of the dominant tenement turned around and, in the present case, sued the attorneys claiming the lis pendens was wrongfully recorded. The attorneys appeal from the denial of their anti-SLAPP motion (Code Civ. Proc., § 425.16).[1]

In the published portions of this opinion, we hold that it is proper to record a notice of pendency of action, commonly called a lis pendens, on a dominant tenement when the litigation is an easement dispute. In the unpublished portion of this opinion (part IV, B. 3.), we hold that the attorneys are not foreclosed by the doctrine of collateral estoppel from addressing the validity of the lis pendens. We reverse the trial court's order denying the attorneys' anti-SLAPP motion and direct the court to enter an order granting the motion.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Underlying facts.*

The Oviatt Building is a historic building built on a parcel of real property located at 617 South Olive Street, in downtown Los Angeles (the Oviatt property). The Oviatt property is immediately south of, and adjacent to, the Heron Building located at the corner of Sixth Street and Olive Street at 510 West Sixth Street, Los Angeles. There is an alley between the two buildings. This 15-foot private alleyway lies on the real property upon which the Heron is built (the Heron property).

---

[1] "SLAPP is an acronym for strategic lawsuit against public participation. [Citation.]" (*Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1283, fn. 4.)

2

At the rear of the Oviatt Building, in the alley, is a large, stationary trash compactor as well as a number of large trash receptacles that serve the building and its tenants. By virtue of the manner in which the Oviatt Building was permitted to be constructed, there is nowhere else to place the trash receptacles or the compactor other than in the alley. Further, the only way the Oviatt property owners and tenants and the Oviatt Building's waste removal company can access the large trash compactor and receptacles is through the alley. Thus, if the Oviatt Building did not have access to the alley, it could not service the needs of the building and its tenants.

In October 1985, the owners of the two properties entered into a 10-year contract by which the owners of the Oviatt property could use the alley. This easement contract called for a one-time payment of $12,500 and the installation of a gate. It did not require the payment of a monthly fee. Even though the non-exclusive easement stated it was only to be used in the case of an emergency, the Oviatt property owners used the easement for other purposes, including access to the Oviatt Building's trash bins.

The Oviatt property is the dominant tenement as the easement attaches to its property. Because the easement burdens the Heron property, it is the servient tenement.[2]

The Oviatt property owners continued to use the easement after the easement contract expired in October 1995.

In December 2003, plaintiff and respondent Park 100 Investment Group II, a limited liability company (Park 100) purchased the Oviatt property. (Park 100 was formerly known as the Oviatt Investment Group, LLC.) For ease of reference, hereinafter, we refer to Park 100 as Oviatt.

---

[2]     *Blackmore v. Powell* (2007) 150 Cal.App.4th 1593, 1599; Civil Code section 803 ["DESIGNATION OF ESTATES. The land to which an easement is attached is called the dominant tenement; the land upon which a burden or servitude is laid is called the servient tenement."].

3

Sixth & Olive, Inc. owns the Heron property. For ease of reference, hereinafter, we refer to 6th & Olive as Heron.

Defendants and appellants are Gregory R. Ryan and Wayne B. Brosman. They are the attorneys who represented Heron in 2005. In June and July 2005, attorney Brosman wrote to Oviatt threatening to deny all access to the alley if a new easement agreement was not agreed upon. The owners of the two properties could not come to a consensus as to the terms of a new easement agreement.

In January 2006, the Oviatt property was marketed for sale. Its estimated value was between $15 and $19 million.

In February 2006, attorney Brosman wrote to Oviatt requesting payment of $116,000 for the use of the alley from May 1996 through February 2006, and the payment of $1,000 per month beginning in March 2006. Attorney Brosman mailed a copy of the letter to the listing broker who was handling the sale of the Oviatt property.

Oviatt received several offers. In February 2006, Oviatt entered into negotiations with JMF Development for the sale of the property for $16.9 million. By March 2006, Oviatt and JMF Development had agreed to a purchase and sale agreement.

In March 2006, Oviatt rejected attorney Brosman's demand to enter into a new easement agreement. Oviatt informed attorney Brosman by email that it had the right to use the easement pursuant to a prescriptive easement and pursuant to a covenant running with the Heron building's land, recorded in 1985. Oviatt also notified attorney Brosman that the Oviatt property was on the market, and warned that there could be liability if Heron falsely stated that Oviatt could not use the alley.

B. *The quiet title action (Case No. BC349120).*

1. *The complaint, lis pendens, and expungement of the lis pendens.*

It appears that in March 2006, Heron prevented Oviatt from using the alley to access its trash receptacles and compactor.

4

On March 16, 2006, attorneys Ryan and Brosman filed a verified complaint in Case No. BC349120 to quiet title on behalf of Heron against Oviatt.[3] In its one cause of action to quiet title, Heron sought to establish that there was no easement on its property "except for an easement for pedestrian egress from a fire escape at the rear of the Oviatt Building, for emergency fire, life or safety circumstances."

On March 20, 2006, attorneys Ryan and Brosman recorded a notice of pending action (a lis pendens) against *both* properties.

Two days later, on March 22, 2006, JMF Development notified Oviatt by email that it was withdrawing from the sales agreement because "1. The ongoing litigation of the Heron and the filing of the Lis [Pendens] could potentially drag out a closing date which would not work in terms of my acquisition criteria. [¶] 2. I was unaware that there was no [conditional use permit] for the rooftop Space and the [absence] of the rooftop income would be detrimental to the business model. [¶] [T]hese two unforeseen issues make the purchase [too] risky."

On May 5, 2006, Oviatt filed a verified cross-complaint and filed a lis pendens only with regard to the Heron property.

On May 30, 2006, Oviatt filed a motion to expunge the lis pendens that had been recorded on its property. Among other grounds, Oviatt alleged that the quiet title action did not involve title or the right to the Oviatt property (the dominant tenement).

At the hearing on the motion to expunge, *both* counsel informed the trial court that there was *no legal authority* addressing whether a lis pendens could reference the dominant tenement in an easement dispute.

In a June 21, 2006 four-page ruling, the Honorable Rolf M. Treu granted the motion to expunge concluding the litigation did not involve title or possession

---

[3]     The named defendant in the lawsuit was Oviatt Investment Group, LLC, previously known as La Cienega Investment Group, LLC, and subsequently known as Park 100 Investment II, LLC.

5

of the Oviatt property, and hence, there was no real property claim justifying a lis pendens on that property. Judge Treu determined it would suspend any award of attorney fees and costs, pending further action. On June 26, 2006, Judge Treu entered an order expunging the lis pendens that had been recorded against the Oviatt property.

On August 4, 2006, Oviatt amended its previously filed verified cross-complaint that still sought to quiet title in the claimed prescriptive easement. The cross-complaint also alleged causes of action for intentional interference with economic advantage and slander of title based on the allegation that the filing of the lis pendens on its property was wrongful and caused Oviatt to lose the sale of its property. Oviatt further alleged that the lis pendens was used as a means to extort over $116,000 from Oviatt and force Oviatt to enter into a new easement agreement.

### 2. *The overruling of Heron's demurrer.*

Arguing it was absolutely privileged (Civ. Code, § 47) to record the lis pendens on the Oviatt property, Heron demurred to the intentional interference with prospective economic advantage and slander of title causes of action in Oviatt's amended cross-complaint. On October 12, 2006, Judge Treu overruled the demurrer citing his June 2006 expungement order and indicating that Heron had not stated a real property claim and thus, the recordation of the lis pendens was improper.

In October 2006, Oviatt filed a motion for sanctions against attorneys Brosman and Ryan for filing the demurrer. Attorneys Ryan and Brosman argued that Heron had the right to file a lis pendens on a dominant tenement in an easement dispute and argued that the prior rulings on this issue were erroneous. Attorneys Ryan and Brosman asked Judge Treu to reconsider its prior ruling in light of *Kendall-Brief Co. v. Superior Court* (1976) 60 Cal.App.3d 462 (*Kendall-Brief*) and *Woodridge Escondido Property Owners Assn. v. Nielsen* (2005) 130 Cal.App.4th 559 (*Woodridge*). Judge Treu declined to reconsider his prior ruling,

6

but denied the sanction request concluding that the attorneys had a colorable argument in suggesting it was permissible to file a lis pendens on the Oviatt property, i.e., the dominant tenement.

3. *The denial of Heron's motion for summary adjudication.*

On November 22, 2006, Heron filed a motion for summary adjudication of the intentional interference with prospective economic advantage and slander of title causes of action in Oviatt's first amended cross-complaint. Heron argued that an easement is a property interest that affects two separate parcels of real property, such that a lis pendens may be recorded on *both* parcels, the dominant and servient tenements. Among other authority, Heron cited *Kendall-Brief, supra,* 60 Cal.App.3d 462 and *Woodridge, supra,* 130 Cal.App.4th 559. Thus, Heron suggested the lis pendens was privileged and not actionable. Heron noted that at the hearing on the expungement motion, both counsel made a misstatement of the law as both were unaware of *Kendall-Brief* and *Woodridge.*

In opposing the motion for summary adjudication, Oviatt did not argue that the authority presented by Heron was not controlling. Rather, Oviatt contended the expungement order conclusively established that the lis pendens was wrongfully recorded and not privileged, and the trial court could not make rulings inconsistent with its prior rulings. Oviatt also argued Heron could not use summary adjudication as a substitute for a reconsideration motion.

The trial court denied Heron's motion for summary adjudication.

In October 2007, the Oviatt property was sold for $13.5 million.

On January 22, 2008, Oviatt abandoned its claim for a prescriptive easement through its request to quiet title, thereby leaving only the intentional interference with prospective economic advantage and slander of title causes of action.

C. *This litigation* (Case No. BC385309).

On February 11, 2008, Oviatt filed a complaint (Case No. BC385309) against attorneys Ryan and Brosman. Oviatt asserted three causes of action:

7

(1) intentional interference with prospective economic advantage; (2) negligent interference with economic advantage; and (3) slander of title. The gravamen of the complaint was that the recording of the lis pendens on the Oviatt property (the dominant tenement) in Case No. BC349120 was improper.

Attorneys Ryan and Brosman filed an anti-SLAPP motion pursuant to Code of Civil Procedure section 425.16. They argued Oviatt could not prevail on its complaint because it was barred by the litigation privilege (Civ. Code, § 47, subd. (b)), the lis pendens was properly recorded against the Oviatt property, and the interim rulings in the quiet title case were not binding in this lawsuit filed by Oviatt.

Oviatt opposed the anti-SLAPP motion arguing: (1) the rulings by Judge Treu in the quiet title action established that the lis pendens was improperly recorded, and these rulings were binding in the present case; and (2) Civil Code section 47, subdivision (b) expressly excluded an improperly recorded lis pendens from the litigation privilege. Oviatt further contended that it had a reasonable probability of prevailing on its case against attorneys Ryan and Brosman because the lis pendens was properly expunged in Case No. BC349120.

The trial court, the Honorable Charles C. Lee, denied the anti-SLAPP motion.

Attorneys Ryan and Brosman appealed from the denial of their anti-SLAPP motion. We reverse.

## III.

## SUMMARY

We hold that attorneys Ryan and Brosman met their burden to establish that the challenged action of filing the lis pendens on the Oviatt property arose from protected activity. We further hold that Oviatt cannot meet its burden to demonstrate a probability of prevailing on its claim because in an easement dispute, a lis pendens may be recorded on the dominant tenement, here the Oviatt property.

8

IV.

DISCUSSION

A. *Motions to strike under Code of Civil Procedure section 425.16.*

The Legislature enacted Code of Civil Procedure section 425.16 in an effort to curtail lawsuits "brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (Code Civ. Proc., § 425.16, subd. (a).) Code of Civil Procedure section 425.16 provides in part: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

As pertinent here, Code of Civil Procedure section 425.16, subdivision (e) states that an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a . . . judicial proceeding, or any other official proceeding authorized by law; [and] (2) any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body, or any other official proceeding authorized by law . . . ."

Pursuant to Code of Civil Procedure section 425.16, the party moving to strike has the initial burden of establishing that the challenged cause of action arises from protected activity. Then, the burden switches to the plaintiff to demonstrate a probability of prevailing on the claim. (§ 425.16, subd. (b)(1); *Navellier v. Sletten* (2002) 29 Cal.4th 82, 88; *Governor Gray Davis Com. v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 456.)

We review an order granting an anti-SLAPP motion de novo and therefore, we conduct an independent review of the entire record. (*Governor Gray Davis*

9

*Com. v. American Taxpayers Alliance, supra,* 102 Cal.App.4th at p. 456; *Terry v. Davis Community Church* (2005) 131 Cal.App.4th 1534, 1544.)

B. *Filing the lis pendens was protected activity.*

The first step in the analysis is to determine if attorneys Ryan and Brosman made a threshold showing that the challenged act of filing the lis pendens in Case No. BC349120 is one arising from protected activity. (*Navellier v. Sletten, supra,* 29 Cal.4th at p. 88.)

1. *A lis pendens is protected activity.*

Communications in connection with matters related to a lawsuit come within the scope of the litigation privilege and are acts arising from this protected activity. (*Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.* (2004) 122 Cal.App.4th 1049, 1056.) "The filing of a notice of lis pendens falls squarely within [Code of Civil Procedure section 425.16's definition of a protected activity]. [Citations.]" (*Manhattan Loft, LLC v. Mercury Liquors, Inc.* (2009) 173 Cal.App.4th 1040, 1050; accord, *Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1285 [the "filing of the notice of lis pendens in superior court and the naming of . . . lenders as defendants in his lawsuit were writings made in a judicial proceeding. They are squarely covered by section 425.16, subdivision (e)(1)"].)

2. *The lis pendens was not illegal as a matter of law.*

Oviatt suggests attorneys Ryan and Brosman failed to meet their burden to show that the act of filing the lis pendens in Case No. BC349120 arose from protected activity because the activity was illegal as a matter of law. Oviatt cites *Flatley v. Mauro* (2006) 39 Cal.4th 299 for this proposition. In *Flatley,* the defendant attorney's criminal acts of sending letters and making telephone calls to extort money were deemed not protected by Code of Civil Procedure section 425.16. (*Flatley v. Mauro, supra,* at pp. 305, 333.) *Flatley* held that where "the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action." (*Id.*

10

at p. 320.) *Flatley* emphasized that in the examination of the first prong of the anti-SLAPP analysis, an activity was not protected as a matter of law only when the evidence *conclusively* established the illegality. Otherwise, it was an issue to be addressed when the plaintiff was called upon to provide a prima facie showing of the merits of the case. (*Id.* at pp. 319-320.) *Flatley* does not assist Oviatt.

An illegal act is one that is forbidden by law. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 283.) Even if a lis pendens is not appropriate under the circumstances, it is not an illegal act forbidden by law. (E.g., *Manhattan Loft, LLC v. Mercury Liquors, Inc., supra,* 173 Cal.App.4th 1040-1050 [defendants' conduct in filing lis pendens was protected activity even if the lis pendens was invalid as it did not refer to a pending lawsuit, but referred to arbitration proceedings; thus, even if a lis pendens was not properly filed, the defendants met their burden of showing that the act of filing the lis pendens was protected activity].) Additionally, as we discuss below, the filing of the lis pendens here was authorized by law.

In the unpublished portion (part IV, B. 3.) of this opinion, we find unpersuasive Oviatt's contention that the rulings in Case No. BC349120 (the expungement order, the overruling of the demurrer and the denial of the motion for summary adjudication) conclusively establish that the filing of the lis pendens was illegal as a matter of law. This finding rejects Oviatt's collateral estoppel argument.

## [[Begin nonpublished portion]]

### 3. *The doctrine of collateral estoppel does not apply here.*

Oviatt contends attorneys Ryan and Brosman are foreclosed from addressing the propriety of the lis pendens because the expungement order, as well as the order overruling the demurrer and the denial of the motion for summary adjudication, conclusively established that the lis pendens was illegal as a matter

11

of law. In support of this contention, Oviatt looks to the doctrine of collateral estoppel.

"Res judicata prohibits the relitigation of claims and issues which have already been adjudicated in an earlier proceeding. The doctrine has two components. ' "In its primary aspect the doctrine of res judicata [or 'claim preclusion'] operates as a bar to the maintenance of a second suit between the same parties on the same cause of action.". . . The secondary aspect is "collateral estoppel" or "issue preclusion," which does not bar a second action but "precludes a party to an action from relitigating in a second proceeding matters litigated and determined in a prior proceeding." ' [Citations.]" (*Kelly v. Vons Companies, Inc.* (1998) 67 Cal.App.4th 1329, 1335; see also *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 828.)

"Collateral estoppel or issue preclusion bars the relitigation of an issue that was previously adjudicated if (1) the issue is identical to an issue decided in a prior proceeding; (2) the issue was actually litigated; (3) the issue was necessarily decided; (4) the decision in the prior proceeding is final and on the merits; and (5) the party against whom collateral estoppel is asserted was a party to the prior proceeding or in privity with a party to the prior proceeding. [Citation.] 'The "identical issue" requirement addresses whether "identical factual allegations" are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same. [Citation.]' [Citation.] The 'necessarily decided' requirement means only that the resolution of the issue cannot have been ' "entirely unnecessary" to the judgment in the initial proceeding.' [Citation.]" (*Bostick v. Flex Equipment Co., Inc.* (2007) 147 Cal.App.4th 80, 96-97.)

"The purposes of collateral estoppel are to prevent inconsistent judgments that undermine the integrity of the judicial system, promote judicial economy by minimizing repetitive litigation, and protect litigants from harassment by vexatious litigation. [Citations.] Collateral estoppel is not an inflexible doctrine. Even if the minimal requirements for its application are satisfied, the doctrine should not

12

be applied if considerations of policy or fairness outweigh the doctrine's purposes as applied in a particular case. [Citations.] 'In deciding whether the doctrine is applicable in a particular situation a court must balance the need to limit litigation against the right of a fair adversary proceeding in which a party may fully present his case. [Citation.]' [Citation.] 'Moreover, a particular danger of injustice arises when collateral estoppel is invoked by a nonparty to the prior litigation. [Citations.] Such cases require close examination to determine whether nonmutual use of the doctrine is fair and appropriate. [Citations.]' [Citation.]" (*Bostick v. Flex Equipment Co., Inc., supra,* 147 Cal.App.4th at p. 97; *Roos v. Red* (2005) 130 Cal.App.4th 870, 880.)

"To that end, the courts have recognized that certain circumstances exist that so undermine the confidence in the validity of the prior proceeding that the application of collateral estoppel would be 'unfair' to the defendant as a matter of law. [Citation.] [For example,] application of collateral estoppel is unfair where the second action 'affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result.' [Citation.]" (*Roos v. Red, supra,* 130 Cal.App.4th at p. 880, fn. omitted.)

We recognize that collateral estoppel is designed to prevent the relitigation of issues previously determined and to put an end to a dispute rather than creating a continuing cycle of litigation. Here, Oviatt insists that the trial court's orders in the prior lawsuit decisively control the outcome in this case as in those orders Judge Treu held that the lis pendens was improper. Thus, according to Oviatt, attorneys Ryan and Brosman are foreclosed from addressing whether it is proper to record a lis pendens on the Oviatt property, the dominant tenement, as that issue has been previously decided.

However, when Judge Treu was first called upon to address the propriety of the lis pendens in considering the expungement motion, he was not provided with the proper legal authority. His ruling was based upon misrepresentations by both parties as to the state of the law. Both Oviatt and Heron erroneously represented

13

to the court that there was no legal authority in California discussing the propriety of recording a lis pendens on a dominant tenement in an easement dispute. Thereafter, when Heron opposed Oviatt's motion for sanctions, Heron requested the trial court reconsider its prior ruling and brought forth the pertinent authority, including *Kendall-Brief, supra,* 60 Cal.App.3d 462. As discussed more fully in the published portions of this opinion, *Kendall-Brief* holds that a dispute as to the use of an easement over the servient tenement affects title and possession of the dominant tenement and justifies a lis pendens on the dominant tenement. Judge Treu denied the sanction request, but did not address the newly discovered legal authority. Thereafter, when Heron filed its demurrer and motion for summary adjudication, it again brought forth authority to show the validity of the lis pendens.

Thus, when Judge Treu rendered his order expunging the lis pendens, the legal issues had not been fully presented and his decision was based on an incomplete and erroneous understanding as to the state of the law. Thereafter, when faced with the correct and controlling authority, Judge Treu declined to reconsider his prior ruling even though he noted that this new authority provided a "colorable" argument that the recording of the lis pendens was permissible. Heron unsuccessfully tried two more times to have Judge Treu reexamine the issue and consider controlling authority. It appears that throughout the proceedings, Judge Treu relied on his initial analysis, yet that analysis did not include consideration of the appropriate law as both parties were unaware of the pertinent authority.

In these circumstances it is inherently unfair to conclude that the orders rendered by Judge Treu, including the expungement order, conclusively establish that the lis pendens was illegal as a matter of law and thus, it is inappropriate to bind attorneys Ryan and Brosman to those rulings. (Compare with, *Sabek, Inc. v. Engelhard Corp.* (1998) 65 Cal.App.4th 992 [in factual dispute as to if party had minimum contacts with California, property owner is foreclosed from trying to prove proper service after trial court issues third order quashing service].) When

14

the question is one of law rather than a question of fact, a prior conclusion does not prevent a reexamination of the issue "either if injustice would result or if the public interest requires that relitigation not be foreclosed. [Citations.]" (*Consumers Lobby Against Monopolies v. Public Utilities Com.* (1979) 25 Cal.3d 891, 902, distinguished on other grounds in *Kowis v. Howard* (1992) 3 Cal.4th 888, 896-899, & fn. 2.)

[[ End nonpublished portion. ]]

### 4. *Attorneys Ryan and Brosman met their burden.*

As stated above, we have found unpersuasive Oviatt's argument that the lis pendens in Case No. BC349120 was illegal as a matter of law. Also, we have concluded (in the unpublished portion of this opinion) that attorneys Ryan and Brosman are not foreclosed by the doctrine of collateral estoppel from addressing the validity of the lis pendens. Thus, attorneys Ryan and Brosman have met their burden of establishing that the activity of filing the lis pendens arises from protected activity. The burden now shifts to Oviatt to demonstrate a probability of prevailing on the claim.

### C. *Oviatt cannot meet its burden to demonstrate a probability of prevailing on its claims.*

In this litigation, Oviatt asserted three causes of action against attorneys Ryan and Brosman: (1) intentional interference with prospective economic advantage; (2) negligent interference with prospective economic advantage; and (3) slander of title. All are based on the argument that the filing of the notice of pendency of action in Case No. BC349120 was improper. This argument is premised upon Oviatt's contention that it was improper for attorneys Ryan and Brosman to file the lis pendens on the Oviatt property, which is the dominant tenement. Oviatt's analysis fails because a lis pendens can be recorded against a dominant tenement in an easement dispute.

15

1. *The lis pendens statutory scheme.*

" 'A lis pendens is a recorded document giving constructive notice that an action has been filed affecting title or right to possession of the real property described in the notice.' [Citation.]" (*Kirkeby v. Superior Court* (2004) 33 Cal.4th 642, 647.)

California's notice of pendency of action, or lis pendens, scheme is codified in Code of Civil Procedure section 405.1 et seq. Section 405.1 states, " 'Claimant' means a party to an action who asserts a real property claim and records a notice of the pendency of the action." The purpose of this section is to "clarify that the party recording a lis pendens must be a party asserting a Real Property Claim as defined in [Code of Civil Procedure section] 405.4." (Code com., 14A West's Ann. Code Civ. Proc. (2004 ed.) foll. § 405.1, at p. 312.) Pursuant to Code of Civil Procedure section 405.4, a " '[r]eal property claim' means the cause or causes of action in a pleading which would, if meritorious, affect (a) title to, or the right to possession of, specific real property or (b) the *use of an easement* identified in the pleading, other than an easement obtained pursuant to statute by any regulated public utility." (Italics added.) This definition is consistent with the definition found in Code of Civil Procedure section 405.2: " 'Notice of pendency of action' or 'notice' means a notice of the pendency of an action in which a real property claim is alleged."

Parties to an action asserting "a real property claim may record a notice of pendency of action in which that real property claim is alleged." (Code Civ. Proc., § 405.20.) Parties and nonparties "with an interest in the real property affected thereby, may apply to the court in which the action is pending to expunge the notice." (Code Civ. Proc., § 405.30.) Courts "shall order the notice expunged if the court finds that the pleading on which the notice is based does not contain a real property claim." (Code Civ. Proc., § 405.31.) Further, if a real property claim has been pled and as pled lacks evidentiary merit, the lis pendens shall be expunged. (*Palmer v. Zaklama* (2003) 109 Cal.App.4th 1367, 1377-1378.) As

16

stated in Code of Civil Procedure section 405.32, "the court shall order that the notice be expunged if the court finds that the claimant has not established by a preponderance of the evidence the probable validity of the real property claim."

"In making [determination as to whether a real property claim is being asserted], the court must engage in a demurrer-like analysis. 'Rather than analyzing whether the pleading states any claim at all, as on a general demurrer, the court must undertake the more limited analysis of whether the pleading states a real property claim.' (Code com., 14A West's Ann. Code Civ. Proc., *supra,* foll. § 405.31, at p. 342.) Review 'involves only a review of the adequacy of the pleading and normally should not involve evidence from either side, other than possibly that which may be judicially noticed as on a demurrer.' (Code com., 14A West's Ann. Code Civ. Proc., *supra,* foll. § 405.30, at p. 337.) Therefore, review of an expungement order under section 405.31 is limited to whether a real property claim has been properly pled by the claimant. (Code com., 14A West's Ann. Code Civ. Proc., *supra,* foll. § 405.31, at p. 342.)" (*Kirkeby v. Superior Court, supra,* 33 Cal.4th at pp. 647-648.)

When a lis pendens has been expunged, the claimant only may record another notice of pendency of action with leave of court. (Code Civ. Proc., § 405.36.) An order expunging a lis pendens is not appealable, but must be challenged by petition for writ of mandate. (Code Civ. Proc., § 405.39.)

2. *An easement dispute is a real property claim that affects the title and right to possession of the dominant and tenement properties.*

In *Kendall-Brief, supra,* 60 Cal.App.3d 462, owners of lots adjacent to a parcel owned by developer Kendall-Brief Company sought to restrain the developer from using a private road (an easement) located on their property. The owners filed a quiet title lawsuit and recorded a lis pendens against both parcels of property wishing to restrain the developers' use of the easement. The developer filed a motion to expunge the lis pendens as to its property, noting that it was the dominant tenement and the easement was located on the adjacent lots' property.

17

When the expungement motion was denied, the developer requested the court of appeal issue a writ of mandate. (*Id.* at pp. 464-465.)

The appellate court framed the issue before it as: "The primary issue for decision is whether the existence or nonexistence of an easement of right-of-way over a servient tenement affects title to or right of possession of the dominant tenement." (*Kendall-Brief, supra,* 60 Cal.App.3d at p. 464.) *Kendall-Brief* stated that the "test to be applied is whether the main action, involving the existence of an easement of right-of-way over the servient tenement, affects the title or right of possession of the dominant tenement." (*Id.* at p. 467.) *Kendall-Brief* asserted that although the title to the owners' dominant tenement would not be directly affected if an easement right was shown to exist, the owners' right to possession clearly would be affected as access to the property would be impaired. The appellate court went on to conclude that an easement dispute did affect the title or right of possession of the dominant tenement: "Although title to the dominant tenement would not be affected if petitioner were to suffer an adverse result in the main action, the right of possession of the real property definitely would be affected inasmuch as access to such property would seriously be impaired. In our view, 'right of possession' encompasses more than mere ownership of a lot in a land-locked subdivision; it includes the right to have access to and to occupy such property." (*Id.* at p. 468.)

Five years later, *Woodcourt II Limited v. McDonald Co.* (1981) 119 Cal.App.3d 245 (*Woodcourt*) was decided. In *Woodcourt*, the appellate court held that a notice of a lis pendens was made in the course of a judicial proceeding, and privileged pursuant to Civil Code section 47.

Oviatt recognizes that the definition of a "real property claim" in Code of Civil Procedure section 405.4 includes the use of an easement. Oviatt argues, however, that this definition should be limited to permit (1) the recording of a lis pendens on the servient tenement or (2) the recording of a lis pendens on the dominant tenement only when the dispute involves a landlocked piece of property,

18

as in *Kendall-Brief, supra,* 60 Cal.App.3d 462. Thus, Oviatt asserts the lis pendens filed on its property in Case No. BC349120 was improper. However, this argument fails to recognize that even where a parcel is not landlocked, the lack of access to an easement can have devastating effects. The dominant tenement's title is affected as the easement carries with it the right to use the servient tenement. For example, here, if Oviatt was unsuccessful in its battle with Heron, Oviatt would have lost the use of the easement, thereby severely restricting the use of Oviatt's property. In Oviatt's verified cross-complaint, Oviatt admitted that the use of the alley affected its property by stating that if it was excluded from using the alley, it would not be able to service its trash needs. Therefore, Oviatt's right to use the easement is a right of possession encompassing its right to have access to, and occupy the Heron property.[4]

Further, Oviatt's interpretation of the present statutory scheme is contrary to the legislative history and those who have examined the statute. The legislative history and respected treatises consistently state that *Kendall-Brief's* holding was codified in the 1992 amendments to Code of Civil Procedure sections 405.4 and 405.20. This change in the law was intended to include within the definition of a "real property claim" a lis pendens recorded on either the dominant or servient

---

[4] In presenting its argument below, Heron cited to *Woodridge, supra,* 130 Cal.App.4th 559. In *Woodridge,* a homeowner had a side yard easement over the adjoining property of his neighbor. The easement prohibited the dominant tenement from installing most permanent structures on the easement. (*Id.* at p. 563.) The homeowners' association filed a lis pendens on the homeowner's property in conjunction with its lawsuit against the homeowner for declaratory and injunctive relief after the homeowner refused to remove a deck he had built that encroached upon the easement. The trial court granted the homeowner's motion to expunge the lis pendens filed on his dominant tenement. (*Id.* at pp. 564-565.) Before *Woodridge* addressed the issues before it, the appellate court noted that in an unpublished opinion filed the prior year, the same appellate court had held that "the association was entitled to writ relief because [the association] had asserted a 'real property claim' against [the homeowner]." (*Id.* at p. 566.)

19

tenements in an easement dispute, i.e., the use of an easement *upon or appurtenant to* the property affected by the action.

The 1992 amendments to Code of Civil Procedure sections 405.4 and 405.20 codified proposals made by the Real Property Law Section of the State Bar of California after a two year study. These amendments comprehensively revised the lis pendens statutes. (Real Property Law Section of State Bar of Cal., Proposed New Lis Pendens Law With California Code Comments (Sept. 1991) [hereafter Section report]; Legis. Counsel's Dig., Assem. Bill No. 3620 (1991-1992 Reg. Sess.) ch. 883, p. 3535; Assem. Com. on Judiciary, com. on Assem. Bill No. 3620 (as amended Apr. 29, 1992) (1991-1992 Reg. Sess.).) As stated in the Section's report, the new law was intended to codify the holdings in *Kendall-Brief* and *Woodcourt.* The Section report stated in part: "Prior statutory law was not clear regarding the availability of the lis pendens procedure in cases involving easements. An easement does not technically 'affect' title in the sense of changing it, nor does the existence of an easement oust the title holder of possession. Nevertheless, California title insurance practice treats an easement as both an insurable interest and an exception to title. This state of law and practice created confusion regarding the availability of the lis pendens procedure in cases involving easements. See *Kendall-Brief Co. v. Superior Court*[*, supra,*] 60 Cal.App.3d 462 and *Woodcourt II Limited v. McDonald Co.*[*, supra,*] 119 Cal.App.3d 245. [¶] This section expressly includes cases affecting the use of easements within the definition of 'Real Property Claim.' Use of this definition in [Code of Civil Procedure section] 409.210 ('Notice of pending action, required comments, recordation.') thus expressly makes the lis pendens procedure available in all cases which affect the use of an easement *upon or appurtenant to* the property affected by the action." (Section report, *supra,* at p. 7, italics added; see also, Code com. 1, Deering's Ann. Code Civ. Proc. (2009 supp.) foll. § 405.4, p. 143.)

20

Further, pertinent references in the statutory history discussing the Legislature's intent in enacting the 1992 amendments to Code of Civil Procedure section 405.4 to include disputes over easements in the definition of a "real property claim" do not make the distinction urged by Oviatt. Documents in the legislative history make no distinction between those lis pendens placed on a dominant or a servient tenement. Nor do treatises make the distinction Oviatt urges.

The reports submitted to the Legislature discuss all easements. For example, a report to the assembly committee on judiciary stated that the new amendments were "intended to resolve any confusion by recognizing that lis pendens are available in cases involving easements." (Assem. Com. on Judiciary, com. on Assem. Bill No. 3620 (as amended Apr. 29, 1992) (1991-1992 Reg. Sess.), p. 5; accord, Sen. Com. on Judiciary, com. on Assem. Bill No. 3620 (as amended Apr. 29, 1992) (1991-1992 Reg. Sess.), p. 6.)

Treatises on the subject agree that the pertinent statutes presently permit and codify *Kendall-Brief*'s holding and these treatises do not state that such codification was limited to permitting a lis pendens on the dominant easement when there is a landlocked parcel of property. Witkin states: "The *Kendall-Brief Co.* holding was codified in 1992. [Code of Civil Procedure sections] 405.4 and 405.31, read together, provide that an expungement motion premised on the failure to plead a real property claim may be successfully resisted by showing that the action was based on a pleading that would affect the use of an easement identified in the pleading (other than an easement obtained pursuant to statute by any regulated public utility)." (3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 401, p. 509.) Miller & Starr cite Code of Civil Procedure section 405.4, *Kendall-Brief, supra,* 60 Cal.App.3d 462, and *Woodcourt, supra,* 119 Cal.App.3d 245, and state: "There are numerous types of actions that may include a real property claim and therefore may be appropriate for the recordation of a lis pendens [such as, a]ctions regarding easements, including an action to establish an easement, to enforce the

21

claimant's rights under an easement, or affecting the use of an easement, but excluding the right of use of an easement obtained pursuant to statute by a regulated public utility." (5 Miller & Starr, Cal. Real Estate, Recording and Priorities (3d ed. 2000) § 11:150, pp. 11-464 -- 11-466, fns. omitted.)

Because a lis pendens affects the use of an easement *upon or appurtenant to* the property affected by the action, as a matter of law, attorneys Ryan and Brosman were entitled to file, on behalf of Heron, the lis pendens on the Oviatt property as they were asserting a real property claim. Even though we cannot correct the trial court's expungement order (as it occurred in the prior litigation involving the easement) it cannot be used by Oviatt to establish that there is a probability it will prevail on its claims in this case against attorneys Ryan and Brosman for intentional interference with prospective economic advantage and slander of title.

3. *Filing the lis pendens on the Oviatt property was privileged and thus, Oviatt has not met its burden of proof.*

As stated above, *Woodcourt, supra,* 119 Cal.App.3d 245, which had cited *Albertson v. Raboff* (1956) 46 Cal.2d 375, held that a notice of a lis pendens filed in the course of a judicial proceeding was privileged pursuant to Civil Code section 47. Additionally, section 47, subdivision (b)(4) provides an absolute privilege to the filing of the lis pendens in this case. This statute states that "A privileged publication or broadcast is one made: [¶] (b) In any . . . (2) judicial proceeding, . . . except as follows: [¶] . . . [¶] (4) A recorded lis pendens is not a privileged publication *unless* it identifies an action previously filed with a court of competent jurisdiction which *affects the title or right of possession of real property*, as authorized or required by law." (Italics added.) This exception was added to the statutory scheme in 1992, the same year the Legislature clarified the lis pendens statutes to adopt the holding in *Kendall-Brief, supra,* 60 Cal.App.3d 462. (Stats. 1992, ch. 615, § 1; *Palmer v. Zaklama, supra,* 109 Cal.App.4th at

22

pp. 1377-1379.)[5] "Therefore, if the pleading filed by the claimant in the underlying action does not allege a real property claim, or the alleged claim lacks evidentiary merit, the lis pendens, in addition to being subject to expungement, is not privileged. . . . (See Cal. Lis Pendens Practice [(Cont.Ed.Bar 2d ed. 2001)] § 2.8, pp. 36-37; 5 Miller & Starr, Cal. Real Estate [, *supra*,] § 11:45, p. 115-119; Greenwald & Asimow, Cal. Practice Guide: Real Property Transactions (The Rutter Group 2002) ¶ 11:608, p. 11-99.)" (*Palmer v. Zaklama, supra,* at p. 1380.)

Since the filing of the lis pendens on the Oviatt property in Case No. BC349120 alleged a real property claim and was privileged, and because Oviatt has made no argument that the lis pendens lacked merit for other reasons, recordation of the lis pendens cannot be the basis for intentional interference with prospective economic advantage or slander of title causes of action, even if Heron acted with malice. (*Sylmar Air Conditioning v. Pueblo Contracting Services, Inc., supra,* 122 Cal.App.4th at pp. 1058-1059 [where act is privileged, plaintiff cannot show a probability of prevailing]; *Navarro v. IHOP Properties, Inc.* (2005) 134 Cal.App.4th 834, 843-844 [same]; *Albertson v. Raboff, supra,* 46 Cal.2d at pp. 378-382; *Woodcourt, supra,* 119 Cal.App.3d at pp. 249-251; *Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 393 [to plead intentional interference with prospective economic advantage, defendant had to engage in some act that was wrongful by some measure other than the fact of interference itself]; *Palmer v. Zaklama, supra,* 109 Cal.App.4th at pp. 1378-1379; *National Medical Transportation Network v. Deloitte & Touche* (1998) 62 Cal.App.4th 412, 440 [independently wrongful act is required to prove negligent interference with prospective economic advantage]; *Brody v. Montalbano* (1978) 87 Cal.App.3d 725, 738.)

---

[5] The 1992 amendment to Civil Code section 47, subdivision (b)(4) was originally enacted as subdivision (b)(3). (Stats. 1992, ch. 615, § 1.) It partially abrogated *Albertson v. Raboff, supra,* 46 Cal.2d 375. (*Palmer v. Zaklama, supra,* 109 Cal.App.4th at pp. 1378-1380.)

The trial court erred in denying the anti-SLAPP motion filed by attorneys Ryan and Brosman as they were privileged to file the lis pendens in the prior lawsuit.

V.

DISPOSITION

The order is reversed. Costs on appeal are awarded to appellants Gregory R. Ryan and Wayne B. Brosman.

**CERTIFIED FOR PARTIAL PUBLICATION**


ALDRICH, J.

We concur:


CROSKEY, Acting P. J.


KITCHING, J.

24

E

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| FRANK LACHAPELLE, | |
| Petitioner, | E058014 |
| v. | (Super.Ct.No. INC1101291) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| HANSEN MCCOY INVESTMENTS, LLC, et al., | |
| Real Parties in Interest. | |

APPEAL from the Superior Court of Riverside County. Jeffrey L. Gunther, Judge. (Retired judge of the Sacramento Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Petition granted.

John C. Torjesen & Associates and John C. Torjesen for Petitioner.

No appearance for Respondent.

Theresa A. Jones for Real Parties in Interest.

1

In this matter we have reviewed the petition and the opposition thereto, which we conclude adequately address the issues raised by the petition. We have determined that resolution of the matter involves the application of settled principles of law, and that issuance of a peremptory writ in the first instance is therefore appropriate. (*Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 178.)

In the underlying action, petitioner alleges that the security instrument that was executed and recorded when he refinanced his home is void because it was procured by fraud and forgery. Thus, he asserts the real parties in interest, who were purchasers at a non-judicial foreclosure sale and their successors in interest, did not acquire valid title. He asks in an amended pleading for cancellation of their deeds and for quiet title. Petitioner filed a notice of lis pendens on February 25. 2011.

Real parties moved to expunge the lis pendens on the ground that petitioner cannot establish the probable validity of his claim. They contend that their trustee's deed relates back to the recording of the trust deed in 2008 and petitioner can claim no present interest in the property. They also contend that his claim of fraud can form a basis for a claim for money damages only—and not a claim for title or possession of the property.

The trial court ordered the notice of lis pendens expunged. In its tentative ruling, the trial court cited the following statement in Miller and Starr (3rd ed.) section 10.208 to support its ruling: "The purchasers title (at a foreclosure sale) . . . is not encumbered by any interest that is created and recorded after the deed of trust, but prior to the date of the foreclosure sale, even if the foreclosure sale purchaser had actual or constructive notice of the intervening lien or interest." The court recited the facts that the notice of default

2

here showed that the trust deed foreclosed upon was last modified and recorded on November 5, 2009; petitioner's first lis pendens notice was not recorded until February 15, 2011, and that his second one naming moving parties was not recorded until January 3, 2013. "Thus, the moving defendants' trustees' deed relates back to the date of 11/5/09 trust deed and is effective prior to any notice of lis pendens. As a result, there is no basis for a lis pendens to remain against the property."

The parties presented no additional argument at the hearing and the tentative ruling became the court's ruling. Petitioner seeks review of this ruling pursuant to Code of Civil Code section 405.39. We conclude that the court's stated reasons do not support the order for expungement.

Justification for setting aside a foreclosure sale is that the deed of trust is void. (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 104-105; see *Stockton v. Newman* (1957) 148 Cal.App.2d 558, 563-564 [trustor sought rescission of promissory note on grounds of fraud].) There, Lona's home was sold at a nonjudicial foreclosure sale. Lona sued the lender, the loan servicer, and others to set aside the trustee's sale, claiming he was a victim of predatory lending in that the loan broker ignored his inability to repay the loan and Lona, lacking fluency in English, did not understand many of the details of the transaction. The court reversed summary judgment for the lenders, concluding that Lona had raised a triable issue that the underlying loan was illegal and unconscionable, thus excusing him from the requirement he tender full payment of the debt to obtain relief.

Plaintiff's notice of lis pendens is not a lien itself, but simply gives notice that plaintiff was challenging the validity of the trust instrument. Here, at least in the Fifth

3

Amended Complaint, petitioner is claiming that the trust deed is void because of fraud in the inducement and forgery. Petitioner's position is much like Lona's—the security instrument was void and he filed suit challenging it. Thereafter, the nonjudicial foreclosure sale took place, which he now seeks to set aside. Indeed, in the same section cited by the trial court (3rd. ed., § 10.208), Miller and Starr also states that in certain cases the purchaser's title following a foreclosure sale is subject to being recovered by the trustor by an attack on the validity of the instrument. Thus, it appears he has stated grounds to set aside the sale based on the invalidity of the trust deed—he does claim an interest in the real property so that the trial court erred in expunging the notice of lis pendens

Real parties' argument that fraud is simply a monetary claim is not well taken, and we note that petitioner alleges that he acted to rescind the original agreement based on this fraud and forgery. Real parties also argue that the judgment of foreclosure and the eviction have conclusive effect, but in the case relied on, *Malkoskie v. Option One Mortgage Corp.* (2010) 188 Cal.App.4th 968, there was a claim that there were irregularities in the foreclosure sale itself. The judgment of foreclosure was conclusive as to the purchaser's title. Here, as discussed above, petitioner is challenging the security instrument as void. Thus, the foreclosure judgment is not conclusive that that instrument was valid.

We offer no opinion whether the trial court may correctly base an order for expungement on other factors showing petitioner cannot establish the probable validity of his claim. We merely conclude that the trial court's ruling was based on a narrow ground

4

regarding the priority of the purchaser's deed, which is not justified based on the face of petitioner's pleadings. Thus, we conclude that the petition must be granted and the trial court directed to reconsider the motion. The trial court is in no way precluded on reconsideration from reaching the same result, i.e., finding that petitioner has not shown the probable validity of his claim under Code of Civil Procedure section 405.32.

## DISPOSITION

Let a peremptory writ of mandate issue directing the Riverside Superior Court to set aside and vacate its order granting the motion to expunge lis pendens and to reconsider the matter in accordance with the views expressed herein.

Petitioner is directed to prepare and have the peremptory writ of mandate issued, copies served, and the original filed with the clerk of this court, together with proof of service on all parties.

Petitioner is to recover his costs.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
J.

We concur:

RAMIREZ
P. J.

KING
J.

5

# F

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

ROWLAND J. MARTIN, JR.,           §
                                  §
        Plaintiff,                §
                                  §
v.                                §        No. SA-11-CA-414
                                  §
EDWARD BRAVENEC, ESQ., THE        §
LAW  OFFICE OF MCKNIGHT AND       §
BRAVENEC, AND 1216 WEST AVE,      §
INC.,                             §
                                  §
        Defendants.               §

DEFENDANT'S
EXHIBIT
2

## ORDER

On January 18, 2013, Rowland Martin filed a notice of Lis Pendens affecting the real property located at 1216 West Avenue, San Antonio, Texas (the Property). The notice of Lis Pendens indicated that Martin intended to appeal the judgment entered by this Court in the above styled and numbered cause. After the Fifth Circuit affirmed this Court's judgment and Martin refused to cancel his notice of Lis Pendens, this Court entered an order cancelling the Notice. Thereafter, Martin filed a motion for rehearing *en banc* in the Fifth Circuit as well as an amended Notice of Lis Pendens. On December 4, 2013, the Fifth Circuit denied his petition for a rehearing and the Court entered an order cancelling the amended notice of Lis Pendens. That same day, Plaintiff filed a third notice of Lis Pendens, this time indicating that title to the Property was affected by a Bexar County Probate Court matter styled *In re. Estate of Johnnie Mae King*, Cause. No. 2001-PC-1263. The

-1-

notice of Lis Pendens asserts that Martin was the administrator of the Estate and that Defendant Edward Bravenec was "attorney of record." It did not, however, clarify what bearing that probate matter has on the Property at issue in the instant suit.

On February 13, 2014, Defendants filed a motion to expunge Lis Pendens and a motion for contempt. When the Plaintiff failed to respond to the motion, the Court ordered him to explain the relationship, if any, between his administration of the Estate of Johnnie Mae King and the title to the Property. Plaintiff has filed no fewer than three responses to that order. It appears from those responses that the Plaintiff, as the administrator of the estate of Johnnie Mae King, is attempting to re-open and re-litigate a probate matter against Edward Bravenec and the Law Offices of McKnight and Bravenec. The propriety of that action and the accompanying Lis Pendens is well outside of the scope of this Court's jurisdiction. If the Defendants wish to pursue their motion, they should file it in Bexar County Probate Court Number 1.

It is therefore ORDERED that the Defendants' motion for contempt and to cancel lis pendens (Doc. No. 162) be, and it is hereby, DENIED.

SIGNED AND ENTERED THIS ___5ᵗʰ___ day of March, 2014.

HARRY LEE HUDSPETH
SENIOR UNITED STATES DISTRICT JUDGE

-2-

# G

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROWLAND J. MARTIN, JR.<br>SUCCESSOR IN INTEREST TO<br>MOROCO VENTURES, LLC<br><br>Plaintiff,<br><br>v.<br><br>CHARLES GREHN, RELIANT<br>FINANCIAL, INC., EDWARD<br>BRAVENEC, ESQ., THE LAW<br>OFFICE OF MCKNIGHT AND<br>BRAVENEC, *and* 1216 WEST<br>AVE., INC.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. H-10-3644 |

ORDER

Pending before the Court is Defendant Edward Bravenec's Motion to Transfer Venue, Motion to Dismiss for Lack of Subject-Matter Jurisdiction, General Denial, Specific Denials, and Motion for Protective Order (Document No. 9). Having considered the motion, submissions, and applicable law, the Court determines the motion should be granted in part and denied in part.

I. BACKGROUND

Plaintiff Rowland J. Martin, Jr. ("Martin") brings this suit as successor in interest to Moroco Ventures, Inc. ("Moroco") challenging the October 3, 2006 foreclosure of Moroco's real property located at 1216 West Avenue in San Antonio,

14-50093.724

Texas (the "Property"). Martin alleges Defendants Edward Bravenec ("Bravenec") and the Law Office of McKnight and Bravenec (collectively, "Bravenec's Firm"), second lien holders on the Property and Martin's former attorneys, improperly foreclosed on the Property. Martin further alleges Defendants Reliant Financial, Inc. ("Reliant") and Charles Grehn ("Grehn") (collectively, "Reliant"), both former first lien holders on the Property, allegedly committed acts of prohibited trade practices, fraud, and fraudulent transfers for its collection efforts prior to the challenged October 3, 2006 foreclosure.    The relevant facts leading up to Martin's lawsuit are as follows. On October 31, 2003, Moroco executed a deed of trust on the Property in favor of Roy M. Ramspeck and Annette G. Hanson (the "Grantees") to secure payment of a note in the amount of $145,000.00. On June 21, 2004, the Grantees assigned their rights and interests under the note and deed of trust to Reliant. Thereafter, Reliant's servicing agent, Aegis Mortgage Corporation ("Aegis"), began servicing the note. On July 26, 2004, Reliant assigned its rights and interests under the note and deed of trust to Bernhardt Properties I, Ltd. ("Bernhardt"), a nonparty to this suit. Despite Reliant's assignment to Bernhardt, Aegis continued servicing the note.

On May 3, 2005, Moroco executed a second deed of trust on the Property in favor of Bravenec to secure payment of a second note in the amount of $20,000.00.

2

When Moroco defaulted on the second note, Bravenec commenced foreclosure proceedings. On May 2, 2006, a substitute trustee held a public sale, and Bravenec was the successful bidder. On this same day, Moroco filed a voluntary petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division. On June 20, 2006, the bankruptcy court ordered the May 2, 2006 foreclosure sale void and declared that Moroco held title to the Property.

Shortly thereafter, Aegis, as a named secured creditor in Moroco's bankruptcy suit, filed a Motion for Relief from the Automatic Stay. On July 31, 2006, the bankruptcy court signed an "Agreed Order" stating that the automatic stay would remain in effect but that Moroco should continue making monthly payments to Aegis or the Property would be subject to foreclosure without further notice or action by the bankruptcy court. On August 16, 2006, Aegis, pursuant to the Agreed Order, filed a Notice of Termination of the Automatic Stay with the bankruptcy court stating that Moroco was in default of the first lien note. Thereafter, Reliant commenced foreclosure proceedings on the Property. Reliant's substitute trustee issued a notice of public foreclosure scheduled for October 3, 2006.

On October 2, 2006, Bravenec filed suit in the 57th Judicial District Court of Bexar County, Texas to prevent Reliant from moving forward with the October 3, 2006 foreclosure sale. Bravenec then acquired Reliant's first lien interest and

3

14-50093.726

proceeded in place of Reliant at the October 3, 2006 foreclosure sale. Bravenec again was the successful bidder at the sale. A substitute trustee's deed was issued to this effect and subsequently recorded.

On October 13, 2006, Martin filed a third-party petition and application for a temporary restraining order in the 57th Judicial District Court challenging the October 3, 2006 foreclosure sale and asserting claims for wrongful foreclosure and other prohibited transactions. On October 30, 2006, after hearing argument, the presiding Bexar County judge denied Martin's application for temporary restraining order and declared the October 3, 2006 foreclosure sale valid.

Now in federal court, Martin claims Defendants engaged in numerous irregularities relating to Moroco's bankruptcy proceedings and the October 3, 2006 foreclosure sale. Martin asserts the following mixed bag of claims: (1) common law fraud; (2) fraudulent breach of legal and financial fiduciary duties; (3) violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692E; (4) violations of his civil rights under the Civil Rights Act, 42 U.S.C. § 1983; (5) violations of the Clayton Anti-Trust Act, 15 U.S.C. § 1; (6) violations of the Sherman Anti-Trust Act, 18 U.S.C. § 1962(c); (7) declaratory judgment on suit in trespass to try title; (8) injunctive relief to enjoin Defendants' unlawful acts; and (9) negligent infliction of emotional distress.

4

14-50093.727

Bravenec moves in the alternative for transfer of venue under 28 U.S.C. § 1404, for dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, or for a protective order.[1]  With respect to transfer, Bravenec contends that three of the five defendants—Bravenec, Bravenec's Firm, and the Property—reside in San Antonio.  Bravenec contends that Martin and potential witnesses also reside in San Antonio.  Thus, Bravenec argues it would be more convenient for the parties and witnesses and in the interest of justice for this case to be heard in the Western District of Texas, San Antonio Division.  Reliant opposes transfer and Martin does not respond.  For the reasons provided below, the Court

---

[1] Bravenec's grounds for lack of subject-matter jurisdiction and for a protective order are not persuasive, and his motion is denied on those points.  The Court notes that Reliant also moves to dismiss for lack of subject-matter jurisdiction in a separate motion, Document No. 18, not ruled on by the Court.  There, Reliant argues that because Martin never held legal title to the Property, he lacks standing to sue as successor in interest to Moroco.  While Reliant articulates the constitutional elements of Article III standing—injury-in-fact, causation, and redressability—Reliant offers no argument and no authority that Martin actually lacks Article III standing.  Rather, Relaint's argument relies on Texas case law holding that a shareholder lacks standing to pursue the corporation's cause of action. *See, e.g., Wingate v. Hajdik,* 795 S.W.2d 717, 719 (Tex. 1990); *El T. Mexican Restaurants, Inc. v. Bacon,* 921 S.W.2d 247, 253 (Tex. App.—Houston [1st Dist.] 1995, writ denied). Reliant's challenge is construed in actuality as an objection to the prudential limitations on the Court's exercise of federal jurisdiction. *See, e.g., Ensley v. Cody Resources, Inc.,* 171 F.3d 315, 319–21 (5th Cir. 1999).  Prudential limitations are distinct from the Article III standing requirements and are governed under Rule 17 of the Federal Rule of Civil Procedure concerning real parties in interest. *Id.*  Even assuming for the sake of argument that Moroco is the proper real-party-in-interest plaintiff, the Court has serious doubts as to whether Moroco continues to exist as an active Texas corporation given that its charter was forfeited by the Texas Secretary of State over three years ago. *See* Tex. Bus. & Org. Code §§ 11.001(4)(A)–(5), 11.356(a)(3).

5

14-50093.728

finds transfer is warranted.

## II. LAW & ANALYSIS

A motion to transfer venue from one federal district court to another is within the transferor court's sound discretion. 28 U.S.C. § 1404(a); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981). Transfer of venue is only appropriate if a two-part test is satisfied. First, this Court, as the transferor court, must determine if the action might have been brought in the transferee court. *See* 28 U.S.C. § 1404(a); *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004); *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003). Second, this Court, as the transferor court, must ascertain whether transfer is for the convenience of the parties and witnesses and in the interest of justice. *Id.* Under § 1404(a), the movant carries the burden of persuading a court that transfer of venue is warranted. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (citing *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966)). To prevail, the moving party must show that "the balance of convenience and justice weighs heavily in favor of the transfer." *Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co.*, 844 F. Supp. 1163, 1165 (S.D. Tex. 1994) (Crone, J.). Thus, the Court must determine if transferring venue would make it "substantially more convenient for the parties to litigate the case." *See id.*

When evaluating whether transfer is in the interest of justice and for the

6

14-50093.729

convenience of parties and witnesses, "convenience" depends on private and public interest factors, none of which is given dispositive weight. *In re Volkswagen AG*, 371 F.3d at 203. Courts consider the following private interest factors: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Id.* at 203 (citing *Piper Aircraft*, 454 U.S. at 241 n.6). The public interest factors encompass: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law. *Id.* These factors are neither exhaustive or exclusive, nor is any one factor dispositive on the issue of transfer. *Gapp v. Linde Gas N. Am., LLC*, Civil Action No. H-10-4642, 2011 WL 1770837, at *2 (S.D. Tex. May 9, 2011) (Atlas, J.) (citing *Action Indus., Inc. v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir. 2004)).

A.     *Whether this case might have been brought in the Western District of Texas.*

The Court finds jurisdiction and venue are proper in the Western District of Texas, San Antonio Division. Martin asserts claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692E, the Civil Rights Act, 42 U.S.C. § 1983, the Clayton

7

Anti-Trust Act, 15 U.S.C. § 1,[2] and the Sherman Anti-Trust Act, 18 U.S.C. 1962(c),[3] and therefore invokes federal question jurisdiction under 28 U.S.C. § 1331. The location of the Property underlying the basis of Martin's claims, as well as three of the five named defendants, reside in San Antonio.[4] Moreover, all of Martin's allegations concerning the events giving rise to his claims occurred in San Antonio. Thus, Martin's suit could have been brought in the Western District of Texas, San Antonio Division. *See* 28 U.S.C. § 1391 ("A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated . . . ."). Having determined the first prerequisite to transferring venue is satisfied, the Court next weighs the private and public interest factors to determine whether transfer would be for the convenience of the parties and

---

[2] In Martin's Original Complaint under the heading, "FIFTH CLAIM FOR RELIEF," Martin identifies the Clayton Anti-Trust Act, yet he cites the statutory reference 15 U.S.C. § 1, which in actuality is the Sherman Act.

[3] In Martin's Original Complaint under the heading, "SIXTH CLAIM FOR RELIEF," Martin identifies the Sherman Anti-Trust Act, yet he cites the statutory reference 18 U.S.C. 1962(c), which in actuality is the Racketeer Influenced and Corrupt Organizations Act (RICO).

[4] Bravenec, Bravenec's Firm, and the Property all reside in San Antonio, Texas. Reliant and Grehn reside in Harris County, Texas.

8

14-50093.731

witnesses, and in the interest of justice.

**B.      *Whether transfer is for the convenience of the parties and witnesses, and in the interest of justice.***

*1.     Private interest factors*

The private interest factors weigh in favor of transfer. First, Martin, Bravenec, Bravenec's Firm, and the Property are all situated in San Antonio. Second, Martin's allegations complain of events that occurred in San Antonio. Third, Neither Martin nor Defendants have named any witnesses who might testify, but given the location of the alleged events, its likely that any potential witnesses will reside in San Antonio. Fourth, Most, if not all, of the relevant documents, including filed deeds of trusts, state-court filings and orders, and bankruptcy court filings and orders, are in San Antonio. Finally, while Reliant contends transferring this case would impose a burden on it and Grehn, Reliant does not appear to have encountered any inconveniences while participating in Moroco's bankruptcy proceedings, conducting foreclosure proceedings on the Property, or defending against Brevenec's state-court action to prevent Reliant from moving forward with the October 3, 2006 foreclosure sale, all of which occurred in San Antonio. Thus, the Court concludes that the general consideration of convenience for the parties, witnesses, and the overall efficiency of the case, would be better served by trial in the Western District of Texas.

9

14-50093.732

*2.    Public interest factors*

The public interest factors are neutral in the Court's analysis. First, none of the parties have presented any evidence or statistics that the Western District of Texas's court congestion is greater than this Court. Second, the Western District of Texas has no apparent "localized interest" in resolving this case. Third, the Western District of Texas is well-equipped to apply the federal and state laws that govern this case. And finally, the Court finds this case does not require resolving problems in conflicts of law nor the application of foreign law. Accordingly, the public interest factors add no weight to the balance favoring transfer.

## III.  CONCLUSION

Having considered the private and public interest factors, the Court determines that on balance, these factors weight in favor of transfer to the Western District of Texas, San Antonio Division.  Accordingly, the Court hereby

ORDERS that Defendant Edward Bravenec's Motion to Transfer Venue, Motion to Dismiss for Lack of Subject-Matter Jurisdiction, General Denial, Specific Denials, and Motion for Protective Order (Document No. 9) is GRANTED IN PART and DENIED IN PART.  The Court further

ORDERS that this case is hereby TRANSFERRED to the United States District Court for the Western District of Texas, San Antonio Division.  The Court further

10

14-50093.733

ORDERS that Defendant's Motion to Dismiss for Lack of Subject-Matter Jurisdiction and Motion for Protective Order are DENIED.

SIGNED at Houston, Texas, on this __19__ day of May, 2011.

DAVID HITTNER
United States District Judge

11

# H

The clerk shall file this order in the main bankruptcy case as well as in this adversary proceeding.

**SO ORDERED.**

**SIGNED this 10th day of August, 2012.**



_____
LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE

IN THE U.S. BANKRUPTCY COURT
FOR THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| Rowland J. Martin<br>Plaintiff ) ) ) | Adversary Case 11-05141-LMC |
| v. ) ) | |
| Edward Bravenec<br>Defendant ) ) ) | |
| In Re ROWLAND J. MARTIN, JR.,<br>DEBTOR ) ) | Case No. 05-80116-LMC |

## AMENDED ORDER REOPENING BANKRUPTCY CASE NO. 05-80116-LMC

The Court, having considered *"Debtor's Motion For Relief From The Bankruptcy Court's Order Of July 28, 2011 And To Compel Turnover Of Assets,"* finds that the post-petition foreclosure of involving the property at 1216 West Ave., in San Antonio, Texas, an asset of the Chapter 11 estate in Bankruptcy Case 06-50829 on October 3, 2006, is subject to this Court's *in custodio legis* authority

028573    53                 72705028601011

DOCUMENT SCANNED AS FILED

under Bustamonte v. Cueva, 2004, 371 F.3d 232, rehearing denied U.S. App. LEXIS 11719 (5th Cir. Tex., June 14, 2004) *cited in* Ashley Place, Inc. v. Nicholson, 2007 U.S. Dist. LEXIS 24801 (W.D. Tex. 2007) (Civil Action No. SA-06-CV-999-XR), and that the Debtor has demonstrated standing as a purchase money creditor of former Debtor in Possession Moroco Ventures, LLC. Therefore, the Court finds that the Debtor's motion for further proceeding in the above Adversary Case 11-05141-LMC should be **GRANTED** in part, and designated for hearing in part, pursuant to Bankruptcy Code Sections 105, 362, and 542. **IT IS THEREFORE,**

**ORDERED,** *"Debtor's Motion For Relief From The Bankruptcy Court's Order Of July 28, 2011 And To Compel Turnover Of Assets,"* is hereby granted in part to authorize *nunc pro tunc* relief from the Court's Order of July 28, 2011 in Bankruptcy Case No. 05-80116-LMC, and

**IT IS FURTHER ORDERED,** that the Debtor is authorized to prosecute turnover relief in the above Adversary Case Adversary Case 11-05141-LMC, based on his standing as a purchase money creditor of former Debtor in Possession Moroco Ventures, LLC, and that Edward Bravenec, 1216 West Ave., Inc., Bailey Street Properties, Inc., the Law Office of McKnight and Bravenec, and the Law Firm of Hughes Watters Askanase are designated as Respondents and Defendants in this matter.

### ###

DOCUMENT SCANNED AS FILED

SO ORDERED.

SIGNED this 24th day of September, 2012.



_____
LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE

---

# United States Bankruptcy Court
### Western District of Texas
### San Antonio Division

| | |
|---|---|
| In re | Bankr. Case No. |
| Rowland J. Martin | 05-80116-C |
| *Debtor* | Chapter 13 |
| Roland J. Martin | |
| *Plaintiff* | |
| v. | Adv. No. 11-5141 |
| Bexar County & Edward Bravenec | |
| *Defendants* | |
| Rowland J. Martin | |
| *Plaintiff* | Adv. No. 12-_____ |
| v. | |
| Albert McKnight & Edward Bravenec | |
| *Defendants* | |

## Order Title

7690401158801 0
DOCUMENT SCANNED AS FILED

SO ORDERED.

SIGNED this 24th day of September, 2012.



_____
LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE

# United States Bankruptcy Court
Western District of Texas
San Antonio Division

| | |
|---|---|
| In re | Bankr. Case No. |
| Rowland J. Martin | 05-80116-C |
| *Debtor* | Chapter 13 |
| Roland J. Martin | |
| *Plaintiff* | |
| v. | Adv. No. 11-5141 |
| Bexar County & Edward Bravenec | |
| *Defendants* | |
| Rowland J. Martin | |
| *Plaintiff* | Adv. No. 12-_____ |
| v. | |
| Albert McKnight & Edward Bravenec | |
| *Defendants* | |

**Order Title**

56

011577

7690401588010
DOCUMENT SCANNED AS FILED

Came on for consideration the foregoing matter. Plaintiff Rowland Martin seeks reconsideration of this court's order abstaining from consideration of the lawsuit the subject of his removal, *Martin v. Bexar County et al.*, pending in state court. Along the way, it appears that, by amendment, he also seeks to remove another piece of state court litigation, *Martin v. McKnight et al.* He argues that the orders entered in that case might well be void *ab initio* under recent Texas Supreme Court authority.

The court declines to reconsider its earlier ruling regarding abstention. The court further remands *Martin v. McKnight*, to the extent that this pleading might be considered to be a removal of that action. The reasons are simple. There is no reason why these matters cannot be argued to the state court. Indeed, they are better being argued to the state court, as federal jurisprudence in this circuit differs from state court jurisprudence. The state court rule of law on this issue is more favorable to the plaintiff. He is better off in state court.

With regard to *Martin v. McKnight*, the court must remand that action, as the matter cannot be heard by this court. It does not fall within this court's subject matter jurisdiction. *See* 28 U.S.C. § 1334(b), 1452(b). The state court, by contrast, has plenary jurisdiction to decide the matters. The state court is permitted to construe and to apply federal law in a state court proceeding, just as federal courts are permitted to construe and to apply state law in federal proceedings.

The motion to reconsider is denied. The abstention order with regard to *Martin v. Bexar County* stands. The suit styled *Martin v. McKnight* is remanded to state court (to the extent it was ever removed).

011577   76904011588010

DOCUMENT SCANNED AS FILED

I



# Fourth Court of Appeals
## San Antonio, Texas

February 2, 2015

No. 04-14-00483-CV

Rowland **MARTIN**, Jr.,
Appellant

v.

Edward L. **BRAVENEC** and 1216 West Ave., Inc.,
Appellees

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2014-CI-07644
Honorable Dick Alcala, Judge Presiding

## O R D E R

Appellee has filed a Motion to Dismiss or in the Alternative Motion to Re-Plead or in the Alternative Request for Extension of Time. Noting this court's prior orders dated December 4, 2014, and December 8, 2014, specifying the two trial court orders before the court in this appeal, appellee asserts the appellant's brief ignores those orders and "addresses every issue ever litigated." Appellee's motion to dismiss and motion to re-plead are DENIED; however, in disposing of this appeal, this court will consider only those issues raised in appellant's brief that relate to the orders this court has expressly identified as the subject of this appeal. Appellee's request for an extension of time is GRANTED. Appellee's brief must be filed no later than March 2, 2015.

_____
Jason Pulliam, Justice

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of the said court on this 2nd day of February, 2015.

_____
Keith E. Hottle
Clerk of Court



# Fourth Court of Appeals
## San Antonio, Texas

February 24, 2015

No. 04-14-00483-CV

Rowland **MARTIN**, Jr.,
Appellant

v.

Edward L. **BRAVENEC** and 1216 West Ave., Inc.,
Appellee

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2014-CI-07644
Honorable Dick Alcala, Judge Presiding

## ORDER

The Appellant's Motion for Rehearing is DENIED.

_____
Jason Pulliam, Justice

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of the said court on this 24th day of February, 2015.

_____
Keith E. Hottle
Clerk of Court